No. 28,936.

THE OIL WELL SUPPLY COMPANY, *Appellee,* v. W. F. HOPPER, *Appellant.*

(282 Pac. 701.)

Opinion filed December 7, 1929.

A. C. Malloy, Roy C. Davis and Warren H. White, all of Hutchinson, for the appellant.

C. A. Matson, I. H. Stearns and E. P. Villepigue, all of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The question involved here is whether a dealer in oil-well casing was liable on an implied warranty that the casing was fit for the particular purpose for which it was sold. The dealer was held not liable, and the purchaser appeals.

The facts were substantially as follows: The plaintiff, a dealer in oil-well casing and other oil-well supplies, sold to the defendant, an oil-well driller, a quantity of 24-pound National seamless pipe or casing which proved to be defective and leaky. The defendant computed his damage and deducted it from his last payment on account. Plaintiff sued him for the balance and defendant counterclaimed for his damages. The court sustained a demurrer to the defendant's defense and counterclaim and directed a verdict for the plaintiff on the ground that plaintiff, being a dealer and not a

manufacturer, no implied warranty arose that the pipe was fit for the particular purpose for which it was purchased and used. The casing was manufactured by the National Tube and Supply Company and distributed to various dealers for sale, the plaintiff being a dealer.

The defendant contends that there was an implied warranty of fitness for the purpose intended by the buyer. Similar questions have been before this court on a number of occasions. In *Lukens v. Freiund,* 27 Kan. 664, it was said substantially that there was no implied warranty of fitness in a specific chattel, in its then state. The defendant argues that it is well known that one of the main purposes in casing oil wells is to shut out the water; that casing which does not answer this purpose is absolutely worthless and of no value; that he wanted an extra good casing which would shut out the water and hence ordered seamless steel casing; that it failed to meet the requirement, failed to shut out the water; that an actionable wrong resulted, no matter whether it be called breach of implied warranty or breach of contract. He testified:

"Q. Mr. Hopper, this was National tube casing? A. Yes, sir.

"Q. By that you mean the National Tube and Supply Company were the manufacturers and the other people sell this pipe, other supply companies; that is right, isn't it? A. Yes, sir.

"Q. And that National tube casing simply means that the National Tube Company, Tube and Steel Company, are the manufacturers? A. Yes, sir.

"Q. And they distribute it to other companies for sale? A. Yes, sir."

We are of the opinion that the casing in question was a well-known and defined article bought to be used in the drilling of an oil well; that if any inspection was necessary or needed, it was open for inspection by the defendant as well as the plaintiff and that the trial court correctly applied the rule enunciated in *Illinois Zinc Co. v. Semple,* 123 Kan. 368, 255 Pac. 78, to the effect that—

"A contract for the sale of a known, described and defined article, manufactured generally for the trade, in which no warranty is expressed, does not give rise to an implied warranty of fitness for the purpose intended by the buyer, although the seller knew the buyer was purchasing it to accomplish that purpose." (Syl. ¶ 2.)

No contention is made that anything other than National seamless casing was purchased; no contention that it was sold by the manufacturer and no contention of an express warranty. In a note in 35 L. R. A., n. s., 286, it is said:

"It is almost universally conceded to be the rule that the sale of a specific article under a definite specific description, while raising a condition precedent

to the purchaser's duty to accept, or a warranty of 'identity to the same effect, does not raise a warranty of fitness for the purpose intended. But to the contrary, it precludes such an implied warranty; and this is true although the seller knew of the purpose for which the article was purchased." (*Citing De Witt v. Berry*, 134 U. S. 306, 33 L. Ed. 896, and other authorities.)

We believe the rule laid down in *Ehrsam v. Brown*, 76 Kan. 206, 91 Pac. 179, controls. It was there stated:

"Where a known, described and specified article is sold by a dealer under a contract to be executed by delivery of the specified article, which is actually supplied to the buyer, there is no implied warranty that it shall answer the particular purpose intended by the buyer, although such purpose is communicated to the dealer beforehand.

"Where a dealer contracts to deliver to a purchaser at an agreed price a known, described and specified article, manufactured generally for the trade, there is no implied warranty against latent defects of which the dealer has no knowledge." (Syl.)

The judgment is affirmed.