No. 29,348.

F. E. DEVLIN, *Appellant*, v. THE CITY OF PLEASANTON, *Appellee*.

(288 Pac. 595.)

Opinion filed June 7, 1930.

Chester I. Long, J. D. Houston, Claude I. Depew, W. E. Stanley, all of Wichita, and John O. Morse, of Mound City, for the appellant.

A. M. Kent and John A. Hall, both of Pleasanton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by F. E. Devlin, a civil engineer, against the city of Pleasanton, on alternative causes of action, one on a city warrant for $2,750 issued by defendant to plaintiff, and another upon a settlement agreement whereby defendant obligated itself to pay plaintiff $2,750 for engineering services.

This controversy had its inception as follows: On April 14, 1924, the city of Pleasanton determined to pave certain of its streets, and to that end it employed the plaintiff, a civil engineer whose headquarters were in Wichita, "to prepare maps, plans, profiles, specifications, estimates of quantities and costs, and to supervise the construction of paving, grading, curbing, drawing and otherwise improving streets and alleys, within the city of Pleasanton, to connect the terminals of the short-line road project through said city."

The contract of employment also obligated the plaintiff to consult with and advise the city council touching the engineering work, to provide forms of ordinances, resolutions, notices and the like, to be present at all lettings of construction work, and to furnish an experienced supervising engineer who should reside in Pleasanton while the construction work was in progress and whose duty it would be to lay out all work for the contractor, set grade stakes, inspect and test all materials, and to furnish an experienced chemist and complete laboratory equipment for testing the asphalt, brick, cement, sand, gravel and rock used in the improvement and to make daily tests thereof. For these services satisfactorily performed

plaintiff was to receive a consideration of 5 per cent of the cost of the improvement, less $500 preliminary payment and whatever other advances might be paid to him as the work progressed.

Certain details of the contract of employment which may need particular attention stipulated:

"That this contract shall remain in force and effect . . . if the work of paving or otherwise improving is done in Pleasanton within a period of one year from the date [April 14, 1924]."

"For the above services, the party of the first part hereby allows the party of the second part the sum of $500 when the plans and specifications are approved by the state highway commission and the mayor and council of the city of Pleasanton."

Pursuant to this contract plaintiff set about its performance. He and his employees made surveys. He made various preliminary plans and estimates and eventually drafted the plans and specifications upon which the improvement was constructed. The work itself was greatly delayed in the hope and expectation that the board of county commissioners and the state highway commission would contribute to the payment thereof. In 1927 the city council felt assured that these contributions would be forthcoming and that a considerable part of the work which the plaintiff had agreed to perform would be done by employees of the state highway commission, so the mayor and council entered into negotiations with plaintiff for a new agreement with him whereby he would terminate his contract and retire. Such an agreement was effected on April 4, 1927. Plaintiff agreed to accept the sum of $2,750 in full for his services already performed, and a city warrant for that sum was issued to him. Shortly thereafter the city administration changed. The new city treasurer refused to pay the warrant, and this lawsuit followed.

The cause was tried by the court without a jury. No material issue of disputed fact was developed in the evidence. It was shown that the cost of the improvement was $89,702.71, so that if the original contract for plaintiff's services had not been canceled by the agreement which gave rise to this lawsuit, plaintiff would have been entitled to $4,485.13 upon his satisfactory completion of all the services he had undertaken. The trial court made findings of fact, some of which read:

"(3) The engineering work . . . was a pavement through the city . . . to connect up with a benefit-district road under R. S. 68-706.

"(4) The plaintiff, under his contract with the defendant, has partly performed the work required of him under paragraph one and he has partly performed the work required of him . . .

"(5) The plaintiff has wholly failed to perform the things required of him under paragraphs two, three, five, six, seven and eight of said contract.

"(8) The paving project was constructed under the plans made by the plaintiff and approved by the state highway engineer, but several 'change orders' were recommended by the resident engineer and approved by the state highway engineer, which resulted in total overcharges on the contract in the sum of $1,302.95 and undercharges in the sum of $3,942.91. Eight of these 'change orders,' were necessary because of errors in the plans prepared by the plaintiff.

"(10) The contract attached to the plaintiff's petition was prepared by the plaintiff and submitted to the city council and signed by the acting mayor and city clerk, on motion passed by the council.

"(11) There was no act of agreement on the part of the city that would continue the contract beyond the period of one year fixed in paragraph three.

"(12) Sometime prior to April 4, 1927, the city expressed a desire to have the construction work supervised by the county engineer, and a representative from the state highway engineer's office proposed to the plaintiff that he cancel his contract with the city. These negotiations resulted in an agreement whereby the city was to pay, and the plaintiff was to receive, in full satisfaction of the contract, the sum of $2,750, and a warrant was issued and delivered to the plaintiff for that amount. A copy of this warrant is attached to the plaintiff's petition.

"(13) On April 14, 1924, when the contract was entered into, the plaintiff, with the intent to mislead and deceive, represented to the city council and acting mayor, and led them to believe, and they did believe, that it would be necessary for the city to hire an engineer to make specifications and estimates on different types of pavement, prepare the necessary legal procedure, in order that a contract might be let according to law, notices, bidding blanks, forms of contract, contractor's bond; for such engineer to be present at the letting of the contract and advise the city in awarding the contract to the lowest and best bid; to furnish an experienced supervising engineer who would reside in the city of Pleasanton while the construction was under way; that it would be necessary for such supervising engineer to stake out all work for the contractor, set all grade stakes, lay out all work, inspect and test all material going into the construction; to see, as inspector for the city, that all work was installed in a suitable manner and according to the plans and specifications; that it would be necessary for the city to furnish an experienced chemist and complete laboratory equipment set up in the city of Pleasanton to make daily tests during the construction of asphalt tops, and furnish the city certified copies of the results of such tests; to furnish the city necessary equipment, either at Pleasanton or at the plant where the brick was manufactured, to test all brick; to make necessary analysis of cements and test all sand, gravel, and rock entering into cement work.

"(15) On April 4, 1927, when the warrant for $2,750 was issued and delivered to the plaintiff, the city officials of Pleasanton still believed that it was necessary for the city to furnish an engineer for all the purposes set out in finding

No. 13, and that the plaintiff was entitled to 5 per cent on the cost of such improvement.

"(16) On April 14, 1924, when the contract was entered into between the plaintiff and defendant, the plaintiff knew that the things enumerated in finding No. 13 would be done and furnished by the state highway engineer's office as far as necessary, and that neither he nor the defendant would have any control or supervision over them. The city officials had no such knowledge.

"(18) Just prior to April 4, 1927, when the city proposed to the plaintiff that they cancel the contract, because they preferred to have the work supervised by other engineers, there was no dispute whatever existing between the plaintiff and defendant over the amount due the plaintiff from the city, and there was no dispute existing between the parties over the plaintiff's rights under the contract. They merely agreed to terminate the contract and that the plaintiff's compensation up to date should be fixed at $2,750.

"(20) A fair and reasonable compensation to the plaintiff for all services rendered the city by the plaintiff, including all changes made in the plans and all changes made in routing the road through the city, is $750.

"CONCLUSIONS OF LAW.

"(1) The contract was lawfully entered into by the city.

"(2) Under the circumstances disclosed by the evidence, the plaintiff was under a peculiar obligation to the defendant to inform the city officials that the greater part of the work he was contracting to do came under the duties of the state highway engineer and could not be delegated to the plaintiff. The relation created by the contract was one of trust and confidence, and the plaintiff was under a high moral and legal obligation to disclose to the city officials the knowledge possessed by him peculiar to his profession, and not possessed by the city officials, in regard to the construction of such improvements.

"(3) The defendant is not precluded by the agreement of April 4, 1927, to pay the plaintiff $2,750 and the issuance of a warrant for that amount, for the reason there was no dispute existing between them; there was no actual controversy at that time, and none was anticipated; and neither of the parties to the contract was doubtful of his rights under the contract. There was no consideration to support the settlement and the well-established rule as to the finality of a compromise and settlement does not apply.

"(7) The warrant for $2,750 should be canceled, but the plaintiff is not precluded from recovering upon *quantum meruit*. Judgment should be for the plaintiff for $750 and costs."

Judgment was entered in favor of plaintiff for $750.

Plaintiff appeals, contending that he was entitled to judgment for the full amount prayed for, and that there was no issue between the litigants to justify a judgment on *quantum meruit;* that there was no issue of fraud, misrepresentation or concealment raised by the pleadings and no evidence of either of these vices to justify the findings; and that the findings which controlled the trial court's judgment were outside the issues and not supported by evidence.

It will be helpful, we think, in this appeal to consider what' arguments appellee may be able to advance to uphold the findings and judgment of the trial court rather than to follow in detail the errors assigned by appellant against it.

Counsel for appellee say: "The fundamental difficulty with appellant's position is that he is trying to collect $2,750 and interest for services rendered to the value of $750."

The value of plaintiff's services was not an issue in this lawsuit. Defendant employed plaintiff upon a contract which if carried to satisfactory completion would have entitled him to $4,485.13. After rendering certain services in accordance with that contract, off and on for about three years, the city made a new contract with him whereby he was to terminate his services and accept $2,750 in full satisfaction thereof. All discussion of the value of his services is therefore beside the point.

It is argued in support of the judgment that plaintiff could not perform the contract of April 14, 1924, because many of the matters which by its terms he had undertaken to do fell within the scope of the powers and duties of the state highway commission. The simple answer to that proposition was that at the time that contract was made neither party to it could have had any assurance that the state highway commission would take an active interest in the improvement, or lend the services of one or more members of its engineering staff to further it; and that obvious answer also demolishes the argument of appellee in support of the findings of fraud, misrepresentation and concealment, so elaborately made by the trial court. There is no evidence in this record to support those findings, nor was any such issue tendered or suggested in the pleadings filed by either party.

A labored argument of appellee is constructed around the proposition that there was no controversy or dispute between plaintiff and defendant which could form a legal basis for a compromise settlement at the sum agreed upon between them. Quite true. There was no complaint that plaintiff's plans and specifications and surveys and estimates were defective, no grievance because of "change orders" made or suggested by the state highway commission, no suggestion of fraudulent concealment of facts which plaintiff should have disclosed to defendant before entering into the contract of April 14, 1924, no complaint because plaintiff's services had extended over three years, when it was originally contemplated that the improvement itself could be completed in one year. And if the

fact that there were none of these or any other matters of grievance to form a basis for the agreement and settlement of April 4, 1927, was fatal to a recovery, plaintiff's case would be hopeless indeed. But plaintiff's cause of action was not formulated on the basis of a compromise and settlement of matters of substantial disagreement. So far as this record reveals, there was amity and concord between plaintiff and the city from first to last. The city hired him to do a work which on completion would have yielded him $4,485.12. Eventually the city discovered that it could save considerable money by getting unexpected free services from the highway commission, and by negotiation with plaintiff a satisfactory second agreement was made with him whereby he should receive a stipulated price for what he had already done and expended in connection with his employment, and release the city and be released himself from further performance of the contract of 1924. There was no infirmity in that second contract, no want of power to make it, and no necessity that it be based upon some artificial or fictional controversy to sanction it. The task this court has so far unsuccessfully pursued is to discover any legal or equitable excuse for the city to relieve it from living up to its agreement of April 4, 1927. One quite futile suggestion is that the original contract of employment was for one year. We have quoted above just what the contract said on that point. Time was not of the essence of the contract; the delays were not occasioned through the fault of plaintiff; defendant continued after the year expired to use the services of the plaintiff, and eventually used his plans and specifications in the actual work of constructing the improvement. The findings speak of many "change orders" as if these indicated faults and errors of plaintiff, but the evidence does not warrant such an interpretation. Moreover, no set-off on account of "change orders" or errors of plaintiff was pleaded in diminution of defendant's liability. Indeed, the trial court ignored the "change orders" when it decided the case on its theory of *quantum meruit*.

Appellee calls attention to the fact that plaintiff testified that the reasonable value of his services up to the time he retired was $3,000. It is suggested that this would contribute to the formation of a basis for the judgment entered on *quantum meruit*. We think not. We do not overlook defendant's evidence on this point. It adduced no evidence on the subject of plaintiff's expenses which necessarily had to be taken into account in determining his compensation.

Plaintiff testified that his out-of-pocket expenses for himself and his employees and his office overhead was $1,862.21, but this testimony the trial court found to be unbelievable. It is, however, quite believable, and also a matter of judicial notice which needs no proof, that those expenses running over a period of three years would amount to a substantial sum; and it is also quite believable without formal proof that if plaintiff had not agreed to accept $2,750 and retire, and had held on to his original contract, his stipulated 5 per cent consideration based on the cost of the completed improvement would have yielded him a fair compensation together with all his expenses and a fair profit as well.

A painstaking perusal of this record fails to disclose any justification for the judgment or any legitimate defense to plaintiff's demand. In this case the issues were clearly defined by the pleadings. Plaintiff's petition stated a good cause of action and the evidence in its support was sufficient and not controverted. No meritorious defense was suggested by the answer nor developed by defendant's evidence. In such a situation it becomes the duty of this court under the mandate of the civil code to order the proper judgment. (R. S. 60-3317; *Manufacturing Co. v. Porter,* 103 Kan. 84, syl. ¶ 3, 172 Pac. 1018; *Kansas Wheat Growers Ass'n v. Smith,* 127 Kan. 267, 273 Pac. 437.)

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment for plaintiff as prayed for in his petition.