No. 30,123.

F. L. STEVENS, *Appellant*, v. THE MYERS TIRE SHOP and BYRON MYERS, *Appellees.*

(5 P. 2d 802.)

Opinion filed December 12, 1931.

*Elmer E. Euwer,* of Goodland, for the appellant.

No appearance was made for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action on five promissory notes for $67 each, payable to the Brenard Manufacturing Company and assigned to the plaintiff, F. L. Stevens. The maker was Byron Myers, defendant herein, who did business in Goodland under the name of the Myers Tire Shop.

Plaintiff's petition alleged the execution of the notes, their indorsement and delivery to him by the makers for a valuable consideration before maturity, his ownership of the notes, and defendant's default of payment. Plaintiff prayed judgment for the aggregate sum due, $335 and costs.

Defendant's verified answer admitted the execution of the notes, but alleged that they were executed to plaintiff's assignor pursuant to a contract for the purchase of two radio machines upon defendant's written order, which constituted an agency contract and a guarantee of sales; that the radios so purchased did not receive messages and could not be sold, and that they were not in accordance with the implied warranty—for which reason defendant refused to pay the notes.

"Defendant further says plaintiff claims to have purchased said notes before maturity. But defendant says if plaintiff did purchase such notes before maturity he purchased them *with actual notice and full knowledge of the fraud-*

*ulent nature of the transaction as aforesaid* on the part of the Brenard Manufacturing Company, under which such firm procured such notes from said defendant, and that the plaintiff had such notice and knowledge and was fully informed thereon at and before the time of the purchase of such notes." [Italics ours.]

The cause was tried before a jury. Plaintiff adduced evidence by deposition to support the allegations of his petition. Then defendant presented his evidence, which tended to show that the radio machines which were the consideration for the notes were unsatisfactory, that they would only tune in on KOA, a broadcasting station in Denver. Defendant testified:

"Q. What did you find was the principal trouble with those machines? A. Well, not being a radio man, I don't know, any more than it had no volume—

"Q. Had no volume— A. It had no volume and would only bring one station in.

. . . . . . . . . . . . . . . .

"A. My results ever since have been practically the same, and the same with both machines. KOA comes in either weak or strong. Once in a while KOA comes in very strong, but outside of KOA we seldom get anything besides Salt Lake City, and only once in a while Salt Lake City."

The notes were six in number, all dated September 29, 1928. The radio machines were delivered "about one or two months" after the notes were executed. Shortly after receiving the machines defendant wrote to the company complaining about the defective service they were giving. The first of the six notes was paid on December 31, 1928. Those in default and which became the subject matter of this action fell due at intervals of thirty days thereafter.

Plaintiff's demurrer to defendant's evidence was overruled, and in rebuttal he presented the deposition of one of the partners of the manufacturing company which sold the radio machines to defendant. This partner deposed that he was the manager of the company and he had charge of its business; that on November 21, 1928, he had sold the notes with several others of the aggregate face value of $1,519 to plaintiff for the sum of $1,397.48; and that plaintiff was not concerned in any way with the business affairs of the manufacturing company and had bought them before maturity without notice of any defense thereto.

The jury returned a general verdict for defendant. Plaintiff's motion for a new trial was overruled and judgment was entered on the verdict.

Plaintiff appeals, complaining of the trial court's ruling on the

demurrer to defendant's evidence, of its ruling on the motion for a new trial, and of the general result.

These points may be shortly considered together. It will be noted in the italicized words of the quoted part of the answer that reference was made to "the fraudulent nature of the transaction aforesaid," but no previous allegation or any other recital in any pleading states any fact which could be interpreted as a transaction of fraudulent nature. Neither was any evidence of any transaction of a fraudulent nature adduced at the trial. What defendant's evidence did tend to show was that there was a partial failure of consideration—that the machines were not satisfactory, that they would only tune in on Denver, and there usually in poor volume, although occasionally strong, and that very rarely they would tune in on Salt Lake City. They would not tune in on Clay Center [Nebraska], which was probably the nearest broadcasting station east of Goodland.

Doubtless a defense of partial failure of consideration would be measurably good against the original payee of the notes; but it was no defense against this action by a holder in due course. Indeed, the trial court's instruction to the jury in this case was a correct statement of the pertinent law. It read:

"The notes sued upon in this action are negotiable promissory notes without any conditions that would relieve the defendant because of their form, and the indorsements are regular negotiable indorsements, both notes and indorsements being such as to pass title to an innocent holder without notice of defect."

Applying that statement of law to the case at bar, it does not appear how the verdict and judgment in defendant's favor can stand. There was no fraud inherent in the notes, no infirmity in them available against an innocent holder in due course. The depositions of plaintiff and of the manager of the manufacturing company were to the effect that the notes were negotiated in an ordinary business transaction before maturity, and there was nothing about the depositions themselves to arouse suspicion of the deponents' veracity. That evidence must therefore be given fair consideration in determining whatever issue of fact was raised by the pleadings. (*Record v. Ellis*, 97 Kan. 754, 760, 156 Pac. 712; *Federal Agency Investment Co. v. Baker*, 122 Kan. 460, 252 Pac. 262.) Viewing this record as a whole, it is clear that unless the negotiable instruments act is to be set aside and business confidence in the integrity of com-

mercial paper passing from hand to hand in due course discredited, such instruments must be enforced according to their terms. In *Devlin v. City of Pleasanton,* 130 Kan. 766, 288 Pac. 595, it was said:

"Where the issues are clearly defined by the pleadings and plaintiff's petition states a cause of action and the evidence in support thereof is sufficient, and no meritorious defense thereto is suggested by the answer nor by defendant's evidence, the supreme court is authorized by the civil code to order the proper judgment to be directed." (Syl. ¶ 4.)

To the same effect were: *Manufacturing Co. v. Porter,* 103 Kan. 84, syl. ¶ 3, 172 Pac. 1018; *Mitchell v. Derby Oil Co.,* 117 Kan. 520, syl. ¶ 3, 232 Pac. 224; *Bollinger v. Giles,* 125 Kan. 53, syl. ¶ 2, 262 Pac. 1022, and citations.

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment for plaintiff.