No. 31,344

GEORGE W. Cox, Sole Surviving Partner of the Late Firm of NOFTZGER & Cox, *Appellant,* v. WALTER J. TROUSDALE, *Appellee.*

(27 P. 2d 298.)

Opinion filed December 9, 1933.

L. P. Brooks, L. A. Hasty and J. B. Nash, all of Wichita, for the appellant; George W. Cox and Lawrence Weigand, both of Wichita, of counsel.

Ezra Branine, Alden E. Branine and Fred Ice, all of Newton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover an attorney's fee for professional services. Defendant prevailed, and plaintiff appeals.

The facts giving rise to this action may be summarized thus:

The late Thomas A. Noftzger, Esquire, was the head of a firm of lawyers in Wichita for a number of years and so continued until his death in 1931. The plaintiff George W. Cox became his partner in 1914. In 1919 the defendant Walter J. Trousdale became a client of the law firm of Noftzger & Cox. Trousdale had various business activities in which he required the services of a lawyer. This relationship of attorney and client between Noftzger & Cox and defendant Trousdale continued until September 19, 1927, when he formally discharged them.

At the time of their discharge there was pending in the supreme court of this state an appeal from a judgment in favor of Trousdale against one Amerman for the recovery of some $12,000 worth of industrial bonds. The action had been begun in the district court of Sedgwick county on June 30, 1925, by the law firm of Noftzger &

Cox as attorneys for Trousdale, and a verdict and judgment for $12,410 had been recovered in his behalf on January 31, 1927.

In 1922 one R. L. NeSmith, who had just then been admitted to the bar of this state, entered the employment of Noftzger & Cox at a salary of $125 per month. His salary was increased from time to time until in April, 1925, the firm was paying him $175 per month. About that time NeSmith began to form plans for engaging in the practice of law on his own account, when Mr. Noftzger offered to take him into the firm as a partner on a fixed drawing account of $200 per month and a 5 per cent interest in the fees collected by the firm and an opportunity to build up his own clientele. NeSmith's testimony on this point reads:

[BY COUNSEL FOR APPELLEE]: "You may state, Mr. NeSmith, whether or not you had a conversation with Mr. Noftzger relative to changing your relationship with that firm.

". . . [Objections overruled.]

"A. He [Noftzger] said, 'Bob, I have been thinking about that situation and I have decided to take you and Mr. Masemore both into the firm. I will put you both on a drawing account of $200 a month and 5 per cent of the fees actually collected, that is to the date of the dissolution.' I said, 'Mr. Noftzger, that is only part of my objection to the present arrangement.' He said, 'Bob, what other objection do you have?' I said, 'Well, I want to have my own clientele. I want to build up my own business. If anything would happen to you I wouldn't stay in this firm five minutes. I don't want to be kicked out in the street without any business; I want to build up my own clientele.' He said, 'That's all right, you can go ahead and build up your own business and have your own business just the same as if you were in business for yourself.' I said, 'Under those conditions I will stay.'

"Q. Now, what was said at that time, Mr. NeSmith, as to what you were to do with your clients at the time of the dissolution and with reference to the payment of the fees which they might have owing?

[Objections.]

"A. He said, 'I want it understood that this 5 per cent will be on the fees actually collected as of the date of the dissolution.' . . . He said, 'I don't want to have any accounting afterwards; business stops off right there.' I said, 'Well, it is perfectly all right with me; what I want to do is to have my own clients so I don't have to start out anew if anything should happen to you.' He said that was all right.

"I believe the agreement with Mr. Noftzger was in April, 1925."

About the time of this agreement between Senator Noftzger and NeSmith, Noftzger's partner Cox, plaintiff herein, had a conversation with NeSmith. Cox testified:

"I told NeSmith that the more clients he brought into the firm the better all of us would be suited and the more money we would all make and at the time he left if those clients wanted to go with him that they could and he would then have his own clientele but that all of the work which had been done previous to the time he withdrew would be paid for to the firm of Noftzger & Cox."

On September 1, 1927, NeSmith retired from the firm of Noftzger & Cox. At that time defendant had not paid anything to the firm of Noftzger & Cox for their services in instituting and successfully prosecuting to judgment in the district court the case of *Trousdale v. Amerman,* referred to above. During NeSmith's affiliation with the firm of Noftzger & Cox as a partner he had given particular attention to the case of *Trousdale v. Amerman.* He testified, however, that Senator Noftzger had assisted in dictating the brief used in the trial.

Following the retirement of NeSmith the following correspondence passed between the firm of Noftzger & Cox and Trousdale, to which we must give space:

LETTER TO TROUSDALE

"WICHITA, KAN., September 7, 1927.

*"Mr. Walter J. Trousdale, Newton, Kan.:*

"DEAR MR. TROUSDALE—Mr. R. L. NeSmith has been a member of this firm and has severed his connection with it on the first day of September, 1927, and is now engaged in the practice of law by himself at 516 Fourth National Bank Building.

"You have been a client of this firm during Mr. NeSmith's connection with it, but on account of the fact that he did business for you, we deem it necessary to give you this notice, and say to you that the old firm would be very glad to retain your business, but if you desire Mr. NeSmith to attend to your law business, please kindly advise us, as well as Mr. NeSmith, and we will make the proper arrangements for severing the connection, and transfer the business as of September 1, 1927.

NOFTZGER & COX—By NOFTZGER."

TROUSDALE'S ANSWER

"NEWTON, KAN., September 19, 1927.

*"Messrs. Noftzger & Cox, Wichita, Kan.:*

"DEAR MR. NOFTZGER AND MR. COX—Referring to your letter of September 7. I was sorry to learn of the separation of Mr. NeSmith from your firm. I have the greatest personal regard for all the members of the firm, Messrs. Noftzger, Cox and Masemore, and am sorry the matters I have pending in court had not been completed before this occurred. The two cases that are. unfinished are the so-called Amerman case and the Dixie Oil Company case, and since I at all times conferred with Mr. NeSmith personally concerning them, and he is particularly conversant with them, I feel that I should allow Mr. Ne-

Smith to continue to handle these cases until they are completed. Our relations have been so pleasant in the past that I regret this decision is necessary on my part. I trust you understand my position in the two cases above referred to.

"Thanking you for all past favors, I beg to remain

"Yours very truly,      WALTER J. TROUSDALE."

NOFTZGER'S REPLY

"September 21, 1927.

*"Mr. Walter J. Trousdale, Newton, Kan.:*

"DEAR SIR—We have your letter of September 19, 1927.

"You do not need to apologize to us at all for desiring Mr. NeSmith to attend to your business. It is not only the privilege, but the duty of every man to select his own lawyer or doctor, and there is absolutely no feeling as far as this office is concerned. What we want you to know is that this office is entitled to the fee for the work done until September 1, 1927, and we do not expect to have any trouble about this matter, but at your convenience we would like to have you call and talk the matter over.

"The writer particularly wants to see you.

"Very truly yours,      NOFTZGER & Cox."

Thereafter NeSmith briefed the Amerman case and argued it in the supreme court, and on December 10, 1927, the judgment of the district court was affirmed (*Trousdale v. Amerman,* 124 Kan. 614, 261 Pac. 826). Shortly thereafter NeSmith began to realize on that judgment and within a year he had collected the full amount including interest, $13,727.40. From time to time as NeSmith made collections he deducted therefrom and retained for his own services the sum of $3,500. Trousdale declined to pay Noftzger & Cox, claiming he owed them nothing. Hence this lawsuit.

On November 22, 1929, the action was begun by Noftzger & Cox against Trousdale on an account stated for four items of legal services. The petition, in part, read:

"Comes now the above named plaintiffs and for their cause of action against the defendant herein allege and state:

"They are and have been at all of the times herein mentioned copartners, doing a law business as Noftzger & Cox at 505 Beacon Building, Wichita, Kan.

"The defendant is and has been at all the times herein mentioned a resident of Newton, Kan.

"At the special instance and request of the defendant herein, plaintiffs performed legal services for the defendant for which they have not been paid, and expended money for and on behalf of the defendant for which they have not been reimbursed, as is more fully set forth in the itemized statement attached hereto, made a part hereof, and marked exhibit 'A.' The said sum of seven thousand seven hundred fifty-seven and 67/100 dollars ($7,757.67) is

due plaintiffs herein, none of which has been paid. Said account is just, true and correct, and wholly unpaid and said account has been due since September 1, 1927.

"Wherefore, plaintiffs pray, etc."

"EXHIBIT A

"September 1, 1927.

"Walter J. Trousdale,

"In account with Noftzger & Cox.

"1927. . . . . . . . . . . . . . . ........

. . . . . . . . . . . . . . ........

"Sept. 1 To fee case of Trousdale v. Amerman.................. $6,000.00

. . . . . . . . . . . . . . ........

$7,757.67"

That petition was later expanded into four causes of action, the second being for an agreed fee on the basis of 50 per cent of the judgment in the Amerman case, and the fourth for services in that case based on *quantum meruit*. In this appeal we shall have no concern with anything except for services by Noftzger & Cox in the Amerman case.

On February 18, 1931, plaintiff dismissed the action without prejudice.

Shortly thereafter, on March 2, 1931, Senator Noftzger died. On February 10, 1932, plaintiff as surviving partner recommenced the action, pleading substantially the same facts as to the firm's services in behalf of Trousdale in the Amerman case. The petition also alleged:

"On said date of September 1, 1927, the said NeSmith left the employment of said firm and thereafter at the request of the defendant said NeSmith had the brief printed and argued said action in the supreme court; that said judgment was affirmed in the supreme court in the sum of $13,727.40, which was paid before the 5th day of November, 1928."

Plaintiff alleged that the services as alleged were worth $6,863.70 and judgment was prayed for accordingly.

Defendant's answer contained a general denial, a specific denial of indebtedness to plaintiff, and—

"2. For further answer, said defendant specifically denies that he, at any time, ever employed the firm of Noftzger & Cox to bring an action or lawsuit against M. R. Amerman and Charles Phillips and denies that said R. L. NeSmith was employed by said firm at the time of bringing said action or subsequent thereto, but alleges that the defendant employed the said R. L. NeSmith and no other person to prepare, file and prosecute said action described in plaintiff's fourth cause of action to final conclusion; . . ."

Defendant also alleged that NeSmith had prepared, filed and prosecuted the Amerman case to final judgment and that defendant had paid his $3,500 therefor.

Some other pleadings and amendments to pleadings so far as material will be noted as we proceed.

The testimony touching the value of the services of plaintiff's law firm in instituting and prosecuting the Amerman case to judgment in favor of Trousdale in the district court, which was accomplished prior to their discharge, was the familiar kind of opinion evidence of experienced lawyers based on hypothetical questions. One attorney of twenty-eight years' practice, whose qualifications were admitted by counsel for defendant, testified that the value of the services of Noftzger & Cox rendered in the case up to the time they were dismissed was $3,000. There was no testimony to the contrary. Cox, plaintiff, after narrating the difficulties involved in the case which was complicated by a problem of election of remedies growing out of a prior unsuccessful effort to recover the bonds by replevin, testified:

"The case was handled principally by Mr. NeSmith and Mr. Noftzger until Mr. NeSmith left the firm of Noftzger & Cox. The reasonable value of our services up to September 1, 1927, was half of $12,410, with interest from the 31st day of January, 1927 [date of judgment], at 6 per cent, minus $250, or $300 for what NeSmith did in arguing the case in supreme court after September 1, 1927."

Defendant's testimony on the subject of the employment of counsel in the Amerman case reads:

"In the Amerman case I employed Robert L. NeSmith. . . . I knew I was dealing with a member of the firm; . . . I paid him, NeSmith, $3,500. . . . I owed NeSmith because I employed him as a member of the firm. If I pay a member of the firm, I pay the firm, don't I? . . . I dismissed Noftzger & Cox and had NeSmith take the case on through the supreme court. I would not say that I did not receive the letter in which Mr. Noftzger says to me in part: 'What we want you to know is that this office is entitled to a fee for the work done until September 1, 1927, and we do not expect to have any trouble about this matter.

"Q. . . . You didn't pay Noftzger & Cox anything did you? A. No, sir; I never employed them.

"Q. What is that, once more? A. I never employed them in this matter.

"Q. You employed a member of the firm? A. That is right.

"Q. You knew he was a member? A. I think so.

"Q. You knew he [NeSmith] wasn't a member of the firm when you paid him? A. He was a member of the firm when I employed him.

"Q. You knew he wasn't a member of the firm when you paid him? A. He had withdrawn from the firm September 1, 1927.

"Q. You knew that, didn't you? A. I have a letter from Mr. Noftzger saying that he had withdrawn; yes, sir.

. . . . . . . . . . . .

"Q. Walter, did you know what Bob's arrangement with the firm was? . . . A. I can only answer that by telling what Mr. NeSmith told me.

"Q. All right; tell what he said to you about his connection with the firm. A. That he [NeSmith] was a member of the firm; that he received a drawing account of $200 a month and 5 per cent of the proceeds as of the date of dissolution, and was to build his own clientele.

. . . . . . . . . . . .

"Q. You dismissed Noftzger & Cox and had NeSmith take the case on through the supreme court, didn't you? A. That is correct."

The verdict and judgment were for defendant, and plaintiff appeals, assigning various errors but mainly against the net result.

At the outset, however, defendant raises two objections to plaintiff's right to have the judgment reviewed by this court. These involve the statute of limitations and an alleged shifting of plaintiff's position from the one taken in the trial court.

Touching the first of these, the action was filed originally on November 25, 1929, and dismissed without prejudice on February 18, 1931. It was recommenced on February 10, 1932. This was allowable under the code. (R. S. 60-311.) So far as the fee claimed for services in the Amerman case was concerned, the second cause of action for an agreed 50 per cent fee and the alternative fourth cause of action on *quantum meruit* were substantially the same as they had appeared in the oft-amended petition filed in the first case. It is no longer of any consequence what was pleaded in the second cause of action based on the alleged agreement for a 50 per cent fee, since the jury did not believe plaintiff's evidence concerning it. Death had closed the lips of the man who could have given the most convincing evidence on that subject. But the fourth cause of action as stated in the first case and in the present case was sufficiently pleaded in the original petition filed on November 25, 1929.

Plaintiff's petitions in the first case and in the second case were subjected many times to motions to state more definitely certain inconsequential matters. But the object of both suits, from first to last, was to recover a fee for services in the Amerman case. And since the first action was begun in time and it failed otherwise than on the merits and the second action was begun within one year there-

after, the pertinency of the statute of limitations does not appear. On motion of defendant plaintiff was required to amend his petition to set out the dates when NeSmith made collections on the judgment—on some theory, perhaps, that the statute of limitations would begin to run from some date pertaining thereto. Be that as it may, when these dates were supplied, defendant's demurrer to the petition was overruled, and we do not discover that anything savoring of a cross appeal on this point is presented. If it is, this court holds that the overruling of the demurrer which thus raised the statute of limitations was correct.

Next, as to the alleged shifting of plaintiff's position: We have stated the substance of plaintiff's fourth cause of action in his last amended petition, and we have set out *in haec verba* the cause of action first pleaded in the original petition filed on November 25, 1929. In our view the fourth cause of action in the last amended petition was substantially the same. Plaintiff finally prayed for more than $6,000; and eventually and at the repeated instance of defendant he was compelled to amplify his pleadings; but his pleadings ended where they began—to recover a fee for legal services in the Amerman case up to September, 1927; and his claim for such a fee for those services persisted until issues were finally joined and the cause tried to a conclusion.

Passing now to plaintiff's grievances against the judgment, it may shorten our task to turn to defendant's brief to discover, if we may, why the ordinary rule that the laborer is worthy of his hire should not have been applied in this case?

It is first suggested that plaintiff's second amended petition was a departure from the petition dismissed—as to both the second and fourth causes of action. But as we have just seen, the first petition in the first case contained the very gist of the subject matter which eventually was elaborated into the fourth cause of action. The same evidence would have supported the cause of action first stated in the original case that was adduced in support of the fourth cause of action in the present case. And the redress demanded was the same—a fee for plaintiff's services in the Amerman case. We hold, therefore, that there was no departure.

Defendant argues, however, that the statute of limitations did not begin to run at the time of the dissolution of the firm of Noftzger & Cox on September 1, 1927, but did begin to run at the time of

payment of the Amerman judgment. If that point were good, there would have been left a few months of the three-years period after the cause of action accrued, in which to recommence the action, and consequently plaintiff would not be entitled to recommence it within one year after its dismissal. But the point is untenable. In *Martin v. Camp*, 219 N. Y. 170, L. R. A. 1917F 402, it was held:

"When . . . the [attorney's] services are brought to an end, the cause of action on behalf of the attorney is complete and the statute commences to run. This rule is not affected by the fact that the contract under which the attorney is employed makes his compensation contingent upon the result of an award being made to the client, since the cause of action accrues when he is discharged by the client, and not when the contingency happens upon which his right to compensation was, by the contract, made to depend." (Syl. ¶ 3.)

Here the single cause of action on the items of account stated in the action filed November 25, 1929, shows plainly that plaintiff was proceeding on the theory that the cause of action for legal services in the Amerman case had accrued in September, 1927, and if there was any doubt about that point it was supplied by defendant's letter of September 19, 1927. It was further demonstrated by defendant's own evidence where he repeatedly testified:

"I dismissed Noftzger & Cox and had NeSmith take the case on through the supreme court."

Certainly if the defendant's own testimony is to be believed and if the fair import of his letter to Noftzger of September 19, 1927, be considered, that evidence showed conclusively that the relationship of client and attorney which had theretofore existed between himself and plaintiff's law firm for a number of years was terminated in September, 1927, after the Amerman case had been instituted and carried through to judgment in the district court. Then and not later, plaintiff's cause of action accrued. There was no part of the original three-year period left when the first action failed otherwise than on the merits, and the new action was begun under authority of the code. (R. S. 60-311.)

It is contended that plaintiff has shifted his position because the action was instituted and prosecuted below on the theory that NeSmith was an employee of the firm of Noftzger & Cox, when it was later pleaded and shown that NeSmith was in fact a member of the firm and not an employee during the entire period when the legal services of the firm of Noftzger & Cox were rendered in the Amerman case. We regard that point of no consequence. So long as Senator Noftzger was alive the firm name was that of Noftzger &

Cox. The personnel and staff of that firm was of no significance in this lawsuit. If defendant. had pleaded payment to a member of the firm, or even to an employee authorized to receive payment, a nice question as to the membership of the firm and its employees might become important. What he paid NeSmith long after NeSmith ceased to be a member of the firm did not discharge defendant's debt for the services of plaintiff's firm.

Nor is it of the slightest importance, if true, that all or nearly all of the services rendered by plaintiff's law firm in the Amerman case were in fact rendered by NeSmith when he was a member of that firm. NeSmith's compensation for all his professional services was fixed by agreement of himself and Noftzger in April, 1925. And defendant testified he knew what were the terms of that agreement—that when he should retire from the firm he was to have no claim on any uncollected fees. This was a perfectly fair and reasonable arrangement. Whose client was Trousdale? Indisputably he had been a client of Noftzger & Cox for several years and gave them a good deal of legal business in that interval. And it is perfectly plain that he continued to be the firm's client until he dismissed them in September, 1927.

We do not overlook defendant's testimony where he repeatedly said he never employed the firm of Noftzger & Cox in the Amerman case. His claim was that he employed NeSmith, but he knew NeSmith was a member of the firm; and it is elementary law that in the absence of a special arrangement a client who employs a member of a law firm employs the firm (6 C. J. 629; Ann. Cas. 1917B, 16 *et seq.*), and the compensation for the services performed pursuant to such employment is due to the firm. Moreover, defendant's testimony that he never employed the firm was completely discredited by his admission that he dismissed the firm in September, 1927. If he had not employed the firm there was no occasion to dismiss them. Defendant's testimony is also significant in another respect. He testified that NeSmith had told him just what his connection with the Noftzger & Cox firm was:

"Q. . . . Tell what he said to you about his connection with the firm. A. That he [NeSmith] was a member of the firm, that he received a drawing account of $200 a month and 5 per cent of the proceeds as of the date of dissolution, and was to build his own clientele."

It is elementary that the construction of a contract is a question for the court and not the jury. (*Dohner v. Grocery Co.*, 116 Kan.

237, 226 Pac. 767.) And it must be held that under defendant's own understanding of NeSmith's contractual relation with the firm as a partner, he could not become the individual client of NeSmith until after NeSmith had retired from the firm and until he (defendant) had severed the then existing relationship of client and attorney between himself and Noftzger & Cox.

Under the terms of the contract whereby NeSmith was taken into the partnership NeSmith was to have the privilege of building up a clientele of his own. That did not mean that such clientele could be built up out of the firm's clients, otherwise Noftzger & Cox would be paying NeSmith $200 per month and a percentage of their fees to take their clients away from them. And the harder NeSmith worked to take their clients away from the firm the less wherewithal the firm would have with which to pay him. Touching the negotiations between Noftzger and NeSmith at the time the arrangement was made to take him into the firm, Cox, the surviving partner, plaintiff herein, testified:

"I told NeSmith that the more clients he brought into the firm the better all of us would be suited and the more money we would all make, and at the time he left if those clients wanted to go with him that they could and he would then have his own clientele, but that all of the work which had been done previous to the time he withdrew would be paid for to the firm of Noftzger & Cox."

This testimony, of course, may have been disbelieved by the jury, but it is consistent with the testimony of NeSmith and indeed with common sense.

In view of the foregoing, it seems that the judgment in favor of defendant cannot stand. And what is there left to try anew? Plaintiff's law firm rendered services for defendant in the Amerman case for which it was entitled to payment. It has never been paid. The services are indisputable. Payment to NeSmith after he ceased to be either an employee or a partner was not payment to the firm, especially when defendant was fully apprised of the extent of NeSmith's financial interest in the firm's business and when he knew that NeSmith was neither a partner nor an employee of the firm at the time he did pay him. In the original account stated, plaintiff's services were itemized at $6,000. The evidence as to the value of the professional services of Noftzger & Cox in the Amerman case ranged from $3,000 up to half the judgment recovered. A lawyer witness of many years' experience, whose qualifications to

testify as to the value of a lawyer's services were admitted, testified that the services rendered by the firm of Noftzger & Cox up to the time the firm was discharged was $3,000. There was no evidence to the contrary, nor was there anything in the evidence or the circumstances to discredit the testimony of the witness who suggested this minimum sum.

It is a rule of the code that when a cause is reversed in this court and there is nothing left to try, this court is authorized to render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the trial court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court. (R. S. 60-3317.) So far as plaintiff's claim for an attorney's fee in the Amerman case is concerned, after wading through two bulky packages of pleadings and after perusing carefully the record of the protracted litigation through which it has eventually reached this court, and being fully advised that there never has been a *bona fide* defense to this action, the court deems it proper to terminate it. In *Devlin v. City of Pleasanton,* 130 Kan. 766, 288 Pac. 595, it was said:

"Where the issues are clearly defined by the pleadings and plaintiff's petition states a cause of action and the evidence in support thereof is sufficient, and no meritorious defense thereto is suggested by the answer nor by defendant's evidence, the supreme court is authorized by the civil code to order the proper judgment to be directed." (Syl. ¶ 4.)

See, also, *Platts v. Thompson,* 126 Kan. 544, 551, 552, 268 Pac. 833; *Wegner v. Federal Reserve Life Ins. Co.,* 131 Kan. 100, 101, 289 Pac. 431.

The judgment of the district court will be reversed and the cause remanded with instructions to sustain plaintiff's motion for judgment notwithstanding the verdict, and to enter judgment in plaintiff's behalf for the minimum value of plaintiff's services as established by the evidence, to wit, the sum of $3,000, and for costs of suit.

It is so ordered.

HUTCHISON, J., not sitting.