No. 33,877

B. M. HARMON and A. G. HARMON, doing business as HARMON BROTHERS, *Appellants*, v. D. B. COONROD, *Appellee*.

(79 P. 2d 831)

Opinion filed June 11, 1938.

*Walter B. Patterson*, of Fort Scott, for the appellants.

No appearance was made for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to recover a balance of money due on a sale and exchange of certain farm machinery.

It appears that the plaintiffs, Harmon and Harmon, were partners dealing in farm machinery at Girard. They handled the Avery Champion binder. Coonrod, the defendant, was a farmer in Bourbon county, south of Fort Scott. On May 7, 1936, he made a contract with plaintiffs for the purchase of a new eight-foot Avery Champion binder and transport truck for $253.05, which was to be paid for by delivering to plaintiffs his old binder at an agreed value of $75 and by paying the balance in cash. The terms of the transaction were in writing on a printed form of "retail purchase order," to which reference will be made below. On May 21, 1936, plaintiffs delivered the new binder, and received the old binder and $60 in cash in part payment therefor. While the balance was likewise to be paid in cash, that was not done, which fact eventually gave rise to this lawsuit.

The action was begun before a justice of the peace. Plaintiffs filed their bill of particulars reciting the facts substantially as stated above. To it was attached a copy of the retail purchase order signed by defendant, and which, in part, reads:

"RETAIL PURCHASE ORDER

ALLIS-CHALMERS AGRICULTURAL MACHINERY

DATE, May 7, 1936.

"To Harmon Bros., Girard, Kan.

Please enter order of undersigned for purchase of the following described machinery . . . at the prices and upon the conditions as follows, . . .

| | | |
|---|---|---|
| 1   8 ft. Avery Champion binder | $241.50 |
| Transport truck | 11.55 |
| Total price | $253.05 |

SETTLEMENT

"The undersigned agrees to receive the said machinery, to pay the freight and handling charges in cash, and to settle for the above purchase price as follows: By bill of sale, free of encumbrance, of—

| | |
|---|---|
| 1 used binder | $75.00 |
| By cash on delivery | 178.05 |
| Total (not including freight) | $253.05 |

WARRANTY

"The said machinery is sold by the dealer with the following warranty, and no other:

"Allis-Chalmers Manufacturing Company warrants that it will repair f. o. b.

its factory, or furnish without charge f. o. b. its factory, a similar part to replace any material in its machinery which within one year after the date of sale by the dealer is proved to the satisfaction of the company to have been defective at the time it was sold. . . . .

"This warranty to repair is the only warranty either express, implied, or statutory, upon which the undersigned purchases said machinery: the company's liability in connection with this transaction is expressly limited to the repair or replacement of defective parts, all other damages and warranties, statutory or otherwise, being hereby expressly waived by the undersigned.

. . . . . . . . . . . . .

D. B. COONROD.
By HARMON BROS. (Dealer)."

Defendant's answering bill of particulars contained a general denial and certain admissions, and alleged that the binder sold to him by plaintiffs did not possess "the quality implied by the name Avery Champion Binder"; that it was defectively made and of no value for cutting and binding grain; and "that the said binder would not cut and bind the grain or do the work which Avery Champion binders were manufactured to do and which the trade generally and the parties to this action knew that the Avery Champion binder and transport trucks usually would do."

Defendant further alleged that the binder was wholly worthless and that the consideration for it had wholly failed; that plaintiffs had represented to him that the Avery Company had consolidated with the Allis-Chalmers Company, and that the latter company "was behind the guaranty and the upkeep of the said binder," and that such representation was false and known to be false by plaintiffs, but that defendant had believed and relied on it.

Defendant's bill of particulars also pleaded a cross action against plaintiffs, in which he alleged that he cut 138 acres of grain with the binder, but that it worked so defectively that he lost almost two hundred bushels of oats, barley and wheat on account of it (details and values specified), and that he lost parts of fourteen days' time worth from $2 per hour to $5 per day "endeavoring to get the machine to work"—for all of which defendant prayed damages as itemized, together with reimbursement for the agreed value of the old binder ($75) and the $60 he had paid on account of the new but "worthless machine," in the aggregate amount of $289.87. Defendant's pleading concluded thus:

"Defendant alleges that all and each of the above-mentioned items of damage were caused to him by the false and fraudulent statements of the said plaintiffs on which the said defendant relied and by the fact that the plaintiffs

failed and neglected to deliver unto the said defendant binder of the efficiency and usefulness implied by the name Avery Champion binder."

Various motions and a demurrer were successively lodged against defendant's bill of particulars, all of which were overruled. Defendant also filed a belated amendment to his bill of particulars, in which he alleged that he had tendered back to plaintiffs the binder in controversy and had demanded the return of his old binder and the return of the $60 he had paid, but that plaintiffs "told him that his suggestion was child's play, and that they would under no consideration accept the said binder back."

Plaintiffs filed a verified reply, traversing in detail the allegations of defendant's bill of particulars.

Just what happened to this lawsuit before the justice of the peace does not appear, but in due time it came before the district court for trial *de novo*. A jury was waived and the parties adduced their evidence, which will not need to be detailed for reasons which will appear as we proceed.

At the conclusion of the evidence the court took the cause under advisement and gave counsel for the parties time to submit briefs, after which it made findings of fact and conclusions of law, which, in part, read:

"FINDINGS OF FACT

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"3. The court further finds that the defendant used said machine during the harvesting season of 1936, and the machine did not do a good or perfect job of binding the grain, but said defendant did use the machine through the harvesting season of 1936, and now claims damage because it failed to do the work for which it was intended.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"5. The court finds that the damage suffered by the defendant during the harvesting season of 1936, in using and attempting to use the binder in cutting his wheat, oats and rye, amounts to $110, which amount should be an offset to any amount due plaintiff.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"7. The court further finds that the evidence adduced on the hearing of this case is not sufficient to warrant the court in finding that the defendant rescinded the contract whereby he purchased said Champion binder, and that a lawful tender back to the seller of said machine has never been made.

"8. The court further finds that from all the facts gathered and all evidence before the court, very little or nothing has been done by any of the interested parties to correct whatever defect there is in said Champion binder, relating to a fairly efficient binding power, and if the plaintiffs are willing to put it in perfect working condition so said Champion binder will do a reasonably

complete job of binding oats, wheat and rye, then the defendant should pay the balance due under the contract price, less damage of 1936; if plaintiffs cannot do that, then the defendant should recover damages to compensate him for his losses in harvesting his grain during the season of 1936, which the court finds is $110, and plaintiffs should recover nothing."

"CONCLUSIONS OF LAW

"1. That the contract between the parties to this action and the manufacturing company owning the Champion binder is a valid and enforceable contract and has not been rescinded by the defendant.

"2. That the plaintiffs are entitled to recover from the defendant the balance of the purchase price amounting to $118.05, with 6 percent interest since June 1, 1936, if said binder can be put in first-class condition, and the defendant is entitled to judgment against the plaintiffs for $110, covering his damage in his attempting to use said Champion binder in cutting his grain during 1936 and because said binder did not do a fairly complete job in tying the grain."         .

In accordance with the foregoing findings, judgment was rendered as follows:

"It is therefore considered, ordered and adjudged, that if the plaintiffs will so adjust said Champion binder that it will do a fairly complete job of binding wheat, oats and rye, then they shall have judgment against the defendant for the balance of the purchase price, less the damage caused defendant in using said machine during the harvesting season of 1936. If said Champion binder cannot be so adjusted, then plaintiffs shall not have judgment for the balance of the contract price, but the defendant shall have judgment for his damages in the sum of $110, which amount shall offset all balance due plaintiffs.

"The entire costs of this action shall be paid, one half by the plaintiffs and one half by the defendant."

Plaintiffs appeal, urging various errors, the first of which relates to the overruling of their motion to require defendant to elect whether he would stand on his defense based on the alleged breach of an implied warranty with the resultant damages pleaded in his cross action, or upon his plea of rescission of the contract and his tender of a return of the binder and for the recovery of the consideration he had paid for it.

This motion of plaintiffs should have been sustained. Defendant should have been required to stand squarely on one position or the other. Plaintiffs were obviously handicapped in the prosecution of their cause of action, since they did not know which of the manifestly inconsistent defenses they would have to overcome. This subject of inconsistent remedies has frequently been expounded by this court. Thus in *Sweet v. Bank,* 69 Kan. 641, 77 Pac. 538, this court said:

"The doctrine of the election of remedies has been frequently applied by this court. The cases hold that where the remedies afforded are inconsistent the election of one by a party, with full knowledge of the important facts affecting his right, operates as a bar to the adoption of another of such remedies . . . (Citations.) . . . Election goes not to the form but to the essence of the remedy. It applies only where the law supplies to a party two or more modes of procedure, predicated upon inconsistent and conflicting theories. If the remedies afforded be predicated upon consistent theories, the suitor may use one or all of them; there can be but one satisfaction. Where the remedies afforded are inconsistent, the election of one operates as a bar. Where the remedies afforded are consistent, the satisfaction of the claim operates as a bar." (p. 643.)

In the recent case of *Turner v. Jarboe*, 145 Kan. 202, 64 P. 2d 26, the action was to recover real and personal property plaintiff had given in exchange for a hotel property in Kansas City, Mo. Various motions were unsuccessfully leveled at plaintiff's petition and an intermediate appeal followed. In the course of our opinion, written by Mr. Justice Harvey, it was said:

"In the main the petition is drawn for rescission; it contains all essential allegations for such an action. In it there are allegations of damages and a prayer for a money judgment. When plaintiff found she had been defrauded, as she thought, she had one of two remedies open to her; namely, an action to rescind, or an action for damages. These actions differ fundamentally in several respects. Rescission seeks to hold property or to recover property previously parted with, or its value if it cannot be recovered. In damages, plaintiff in effect concedes the title to the property has passed, no effort is made to recover it, and a money judgment alone is sought. Because of the fundamental differences in these remedies they cannot be commingled. The petition must be drawn on a definite theory. (*Sluss v. Brown-Crummer Inv. Co.*, 137 Kan. 847, 22 P. 2d 965.) Neither can the action be brought first in rescission and then be changed to an action for damages, or vice versa. (*Ireland v. Waymire*, 107 Kan. 384, 191 Pac. 304; *Beneke v. Bankers Mortgage Co.*, 119 Kan. 105, 237 Pac. 932; *Hamilton v. McGinnis*, 119 Kan. 719, 241 Pac. 690.) In such a situation plaintiff may elect which remedy he cares to pursue, but the one elected must be followed throughout. The allegation for damages, therefore, had no place in the original petition, or in the second amended petition. This does not mean, however, that in rescission the court would have no authority, under any circumstances, to render a money judgment. There are circumstances under which a money judgment might be rendered if the court had jurisdiction of the person of defendants. From the allegations of plaintiff's petition it is a little difficult to understand clearly the items which make up the $4,500 for which plaintiff asks a personal judgment. Apparently one item is the rents collected by defendants from the Wyandotte county real property conveyed to them by plaintiff. Perhaps that might be awarded in rescission as necessary to complete equity, but if so it could be done under the general prayer for equitable relief. The remainder of the amount for which a personal judgment was sought, and perhaps all of it, appears to be damages

of different kinds alleged to have resulted from the willful fraud of defendants. This should have been stricken from the second amended petition, or, if not, the demurrer thereto should have been sustained." (p. 207.)

See, also, *Spaulding v. Dague*, 120 Kan. 510, 243 Pac. 1045; *Fleming v. Campbell*, 146 Kan. 294, 69 P. 2d 718; *Curtis v. Hanna*, 146 Kan. 919, 73 P. 2d 1063.

However, the trial court's finding of fact No. 7 took the question of rescission out of the case, so we will pass on to the next point urged against the judgment.

Plaintiffs direct attention to the written contract of the parties, entitled "retail purchase order," quoted, in part, above, in which it was categorically stated that the only warranty to which plaintiffs were bound was the express one to repair or replace free of cost any parts of the binder "proved to the satisfaction of the [manufacturing] company to have been defective at the time it was sold." Plaintiffs invoke the well-known rule of law that a mere dealer in machinery of standard make is not bound by any implied warranty, and that would be particularly true where, as here, the written terms of the contract of purchase had expressly excluded any and all implied warranties. In *Ehrsam v. Brown*, 64 Kan. 466, 67 Pac. 867; id., 76 Kan. 206, 91 Pac. 179, one Brown purchased from plaintiffs two Wolf gyrators for his flouring mill. Plaintiffs were merely dealers in such machinery, not manufacturers. It was held that there was no implied warranty of such well-known machinery as gyrators, and that plaintiffs, being merely dealers, were not liable for any latent defects in their construction. Many subsequent cases of this court have been governed by the same rule. (*Parker v. Hutchinson Motor Car Co.*, 127 Kan. 765, 274 Pac. 1115, and citations; *Oil Well Supply Co. v. Hopper*, 129 Kan. 300, 282 Pac. 701.) It therefore seems imperative to hold that so much of the judgment as imposed damages on plaintiffs for breach of an implied warranty cannot stand.

Turning briefly to the nature of the judgment itself, it should be understood that in a lawsuit based upon a claim for money due and a cross-claim for monetary damages, the litigants are ordinarily entitled to a judgment which will be a finality—one litigant should win in whole or in part, and the other must lose in whole or in part. But the judgment entered in this case was not a finality. It is decreed that "if the plaintiffs will so adjust said Champion binder that it will do a fairly complete job of binding wheat, oats and rye, then they shall have judgment," etc. How is the fact to be ascertained

whether the adjustment of the binder "to do a fairly good job" has been effected? Is that matter to be the basis of a supplemental lawsuit? In *Alexander v. Clarkson*, 100 Kan. 294, 297, 164 Pac. 294, it was said:

"There are two important ends in view in every lawsuit; the first is that it be decided *right;* and the second, which is only less important than the first, is that it be *decided."*

Plaintiffs complain of another matter which the writer of this opinion is personally disposed to overlook, but a majority of the court hold that it cannot be ignored under this court's supervisory duty to see that lawsuits are conducted in conformity with established procedure. When defendant had given his testimony, the court intimated that it was needless to call further witnesses. The record reads:

"By the Court: Well, now, gentlemen, really there wouldn't be any necessity of calling a dozen witnesses. This court won't doubt a word Mr. Coonrod says and I don't know·how you can add to it by trying to say he was in the law or has any rights in the law, and whatever he says about this machine the court is bound by it, and his conscience is bound by it, and I won't doubt a word he says about it. Now, if Mr. Harmon has anything in rebuttal, he could present it. As it presently stands now, every fact is before this court, in my judgment, as will be when you quit with a dozen more witnesses. That is the way I feel about it.

"[Counsel for plaintiffs]: I appreciate what your honor says, but if I want to offer creditable testimony of the—(interruption)—

"By the Court: You wouldn't be able to do that without someone was storying about it. Now, take this for granted; I have known this man too long, just as well as he knows you, or the reporter, or anybody, but the court would be glad to hear anything you would like to present, so proceed.

"(Before the close of the case the following objection was made to the remarks of the court.)

"[Counsel for plaintiffs]: The plaintiffs object to the remarks of the court, in reference to the testimony of the defendant, D. B. Coonrod, as prejudicial to the rights of the plaintiff.

"The court made the following response:

"In that matter, the court is perfectly willing to announce that he has no right now and sees no reason for doubting what either one of the Mr. Harmons has said about this machine or any of their connection with it. It is a question of what the facts will sound in the court's mind, as to being the true facts. As a matter of fact, the plaintiffs, if there is anything to the contention of the defendant that it would not work, the testimony is perfectly apparent, that they were not there all of the time and would have no way of knowing whether it did or did not."

Plaintiffs insist that these remarks of the court were prejudicial. It would seem, however, that whatever errors inhere in the judgment.

they did not arise from the credence given to defendant's testimony, which plaintiffs might have controverted if they had been permitted to call other witnesses. Granting the truth of Coonrod's testimony, it was clearly subject to plaintiffs' demurrer on the ground that it was insufficient to establish a cross action or defense to plaintiffs' bill of particulars. But we must also observe that plaintiffs did not bring into the record the proffered testimony which the court declined to hear, consequently we have no means of ascertaining its importance. (*Elliott v. Oil Co.*, 106 Kan. 248, 251, 187 Pac. 692; *Hall v. Shaffer*, 131 Kan. 109, 289 Pac. 442; *Hunter v. Greer*, 137 Kan. 772, 22 P. 2d 489.) While the trial court's premature avowal of unreserved credence in defendant's testimony before plaintiffs had a full opportunity to adduce evidence to controvert it cannot be approved, and the incident might have compelled a reversal of the judgment under other circumstances, the disposition of the present appeal need not rest on this particular assignment of error.

In view of the various matters considered in this appeal, what disposition should be made of it? Manifestly, the judgment cannot stand. If the cause were remanded for a new trial, what is there left to try? The trial court has held that there was no rescission, and defendant does not complain of that finding. The "retail purchase order" signed by defendant, and which constituted the written contract of the parties, expressly excluded any and all implied warranties. Consequently the cross action for damages based thereon cannot stand; and there was no evidence of breach of the written terms of the contract. Defendant was therefore bound by its terms. In *Manufacturing Co. v. Porter*, 103 Kan. 84, 89, 172 Pac. 1018, it was held that where all the controlling facts to determine a liability were established, and the defense wholly failed, a new trial would confer no favor on defendant but only prolong litigation over a liability which he could not escape, and that final judgment should be ordered. The same rule has been repeatedly followed. (*Kansas Wheat Growers Ass'n v. Smith*, 127 Kan. 267, 273 Pac. 437; *Devlin v. City of Pleasanton*, 130 Kan. 766, 773, 288 Pac. 595; *Cornwell v. O'Connor*, 134 Kan. 269, 272, 5 P. 2d 861; *Stevens v. Myers*, 134 Kan. 286, 5 P. 2d 802; *Security Nat'l Bank v. Crystal Ice & Fuel Co.*, 145 Kan. 899, 909, 67 P. 2d 527; *Security Benefit Ass'n v. Swartz*, 146 Kan. 267, 272, 70 P. 2d 16.)

The judgment is reversed and the cause remanded with instructions to enter judgment for plaintiffs in accordance with the prayer of their bill of particulars.