No. 25,866.

CHRISTOPHER J. BENEKE, *Appellee,* v. THE BANKERS MORTGAGE
COMPANY et al., *Appellants.*

SYLLABUS BY THE COURT.

1. PLEADING—*Statement of Cause of Action—Rescission.* A petition for relief
   on the ground of fraud considered, and held to state a cause of action for
   rescission and not for damages.

2. SALES—*Rescission—Restoration—Pleading.* The petition alleged plaintiff
   was induced by fraud to purchase 100 shares of corporate stock, fifty shares
   of which were delivered to him. In payment for the stock he transferred to
   the seller a note for $10,200, secured by real-estate mortgage. The seller
   paid plaintiff the sum of $200 in cash, the amount of the accrued interest on
   the note. The petition prayed for return to plaintiff of the note and mort-
   gage, but did not plead offer on his part to return the $200 to the seller of
   the stock: *Held,* a demurrer to the petition, on the ground it did not state
   facts constituting a cause of action, was properly sustained.

3. LIMITATION OF ACTIONS—*Commencement of Action—Amendment of Plead-
   ing.* The petition was filed in due time after discovery of the fraud, the
   date of which was stated. The defect in the petition was remedied by
   amendment made more than two years after the fraud was discovered.
   *Held,* the action was barred by the statute of limitations.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB,
judge. Opinion filed July 11, 1925. Reversed.

*Leonard S. Ferry,* of Topeka, for the appellant.

*H. C. Bowman* and *F. S. Jackson,* both of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to rescind purchase of corporate
stock, induced by fraud. Demurrers to the petition and amended
petition were sustained, and plaintiff did not succeed in stating a
cause of action for rescission until more than two years had elapsed
after discovery of the fraud. A demurrer to the petition invoking
the two-year statute of limitations was overruled, and defendants
appeal. Plaintiff justified the ruling on the ground the petition was
at all times good as one for damages.

The amended petition uses approximately 3,500 words to ·say
that the individual defendants colluded and conspired to organize

1. Fraud, 27 C. J. § 145.   2. Cancellation of Instruments, 9 C. J. § 169.   3.
Corporations, 14 C. J. § 1087; Limitations of Actions, 37 C. J. § 516.

the company for the purpose of making fraudulent sales of its stock and appropriating the proceeds; that pursuant to the conspiracy, plaintiff was induced by means of false representations to purchase 100 shares of the stock, 50 of which were issued to him; that plaintiff paid for the stock by indorsing and delivering to the company a note, the property of plaintiff, for $10,200, secured by real-estate mortgage, which was duly assigned; and that plaintiff wanted his note and mortgage back, but if return in specie were impossible, he wanted alternative equitable relief. Damage and damages were mentioned here and there in the petition.

After telling about the formation of the conspiracy, the organization of the corporation, and the methods of disposing of its stock, the petition alleged:

"That said acts intended by the defendants to effect an incorporation of said company were each and all fraudulently taken by them for said fraudulent purposes, and rendered each and every part of said incorporation and pretended incorporation proceedings void and of no effect, except that such defendants and pretended incorporators were rendered liable as partners and joint tort feasors for each and all of their said acts and for all damages resulting to the plaintiff by reason thereof or by reason of any business transaction of said company."

The latter part of this statement was plainly one of group solidarity, and not one characterizing the desired remedy against the group.

By way of introduction to the story of plaintiff's purchase of the stock, the petition said:

"That the plaintiff was injured and damaged by the aforesaid conspiracy and acts of the defendants, taken and committed in pursuance thereof in the manner hereinafter set forth."

This statement did not commit and was not intended to commit the plaintiff to either one of the two incompatible methods of redress open to him.

After pleading delivery of the note and mortgage to the company in payment for the shares of stock and delivery of fifty shares of the stock by the company to plaintiff, the petition continued as follows:

"That the company paid in addition thereto $200 as accrued interest on aforesaid mortgage, and that all of the balance of said $10,200 representing the value of the said real-estate mortgage was by the defendants wrongfully and fraudulently converted to their use, and the said mortgage or its proceeds going first into the assets of said pretended company and later being dis-

Beneke v. Bankers Mortgage Co.

tributed among the other defendants. That plaintiff is not informed as to whether said pretended company still owns and holds said promissory note and mortgage, or has transferred it, and does not know whether said company is able to respond in damages, but is informed that it is not financially able to pay said damages or to restore said mortgage and note to this plaintiff unless the defendants shall be ordered by this honorable court to make restitution to the plaintiff of said property. That the plaintiff has been injured and damaged by said transactions in the amount of $10,200, with interest thereon at the rate of 6 per cent since the 6th day of July, 1920."

There is nothing else in the body of the petition which even squints at a plain suit for damages based, and necessarily based, on the theory that plaintiff affirmed the fraudulent transaction, each party might keep what he had received, and plaintiff should be made whole by a money judgment for damages enforcible by execution.

Following the paragraph of the petition last quoted, the petition related circumstances which led to investigation whereby plaintiff discovered the fraud upon him; charged that the company was either insolvent or was in imminent danger of insolvency; told how a woman came to him and got possession of his stock; and alleged that, as far as plaintiff knew, he was still the registered stockholder, and had been so treated by the company. Plaintiff had then reached the parting of the ways. He had stated facts which entitled him to relief on the ground of fraud, but he was obliged to tell the court what sort of relief he desired.

The decisions of this court establishing and applying the following principles are numerous, and have been collated so many times it is not necessary to do so again: A person fraudulently induced to buy and pay for property delivered to him has two remedies, one legal and one equitable. He may affirm the contract and sue for damages, or he may disaffirm and sue for rescission. If he affirm, he keeps the property, the seller keeps the consideration paid, and the buyer recovers damages for the difference in value between what he received and what he should have received. If he disaffirm, he seeks restoration of the status existing when the sale was made. Affirmance and disaffirmance are contradictory of each other. The sale cannot stand and at the same time be set aside. Because the remedy by way of damages rests on affirmance, and the remedy by way of rescission rests on disaffirmance, the two are inconsistent and incompatible. Resort to one excludes resort to the other, and in choosing a remedy it is the first decisive step which counts. If rescission be resorted to as a remedy for fraud, the sale must fall *in*

*toto.* One who invokes equity to wipe out a fraudulent transaction must do equity on his side. He must restore whatever of value he has received. This does not mean valueless or trivial things, but it means everything of substantial value to the seller, whether valuable to the buyer or not. If the identical consideration which the buyer gave cannot be restored to him, equity having taken hold of the matter will strive to do full justice, and will award compensation in money as the next best thing. Such "damages" are not legal damages; they are the equitable substitute for that which cannot be restored. Sometimes special damages, other than those which result from the loss of the consideration paid, are suffered, and the buyer may have rescission and legal damages besides. Such damages, however, must be specially pleaded, and in this instance we are concerned merely with return of consideration or an equivalent for it.

As a basis for equitable relief, the plaintiff expanded the usual allegation, that the remedy at law by way of damages was inadequate to meet his needs, into the following:

"That the plaintiff is without adequate remedy unless the relief prayed for herein be granted by this honorable court. That the plaintiff is entitled, because of the fraudulent acts and transactions of the defendants heretofore alleged, in the attempted organization of said corporation, and in obtaining from the plaintiff the possession of said real-estate mortgage, to a rescission of the pretended subscription to the stock of said company or the sale thereof to the plaintiff by said pretended company, and to have such transactions annulled and set aside, and the said real-estate mortgage returned to the plaintiff if it is possible for the defendants to make return of the same; and in case such return is not possible, then said company or firm, if it be held that the same does not have corporate entity, be charged with the claim of this plaintiff, and each and all of the defendants held jointly and severally liable to the plaintiff therefor, and that the property and effects of said pretended company or firm be held as a trust fund out of which the claims of this plaintiff shall be made, and that a receiver be appointed for said corporation or firm to take into his charge and custody all of said property and to administer the same under the orders of the court for the purpose of satisfying the claims of this plaintiff."

Having thus expressly claimed benefit of rescission, annulment of the sale, return of the note and mortgage, or as an alternative conversion of the property and effects of the company into a trust fund to take the place of the mortgage and to be administered by a receiver, plaintiff concluded his petition with the following prayer for specific and for general equitable relief:

"Wherefore, the plaintiff prays that the pretended contract or subscription

Beneke v. Bankers Mortgage Co.

of stock set forth above be set aside and annulled, and the defendants be decreed to return to the plaintiff the real-estate mortgage described in the petition. That all of the property, effects and assets of the pretended Bankers Mortgage Company be charged with a lien for the amount found to be due the plaintiff. That the plaintiff have discovery against said defendants as to the amount due him as for injuries resulting from the loss of said mortgage and interest, because of the transactions set forth in the foregoing petition, and that the defendants and each of them be held jointly and personally liable to the plaintiff for all damages suffered by him in case said mortgage cannot be returned, and that plaintiff have judgment against them as aforesaid for any amount found due by reason of their failure to return said mortgage, in the sum not less than $10,200, with interest thereon from July 6, 1920; that a receiver be appointed to take control of all the property of said pretended company or firm and to carry into effect the decree of this court and protect the interests of the plaintiff herein, for the costs of this suit, and for any and all other relief to which he may be found entitled in equity."

Occasionally a petition and prayer may be so cloudy as to occasion doubt whether the purpose was to place the cause of action in the legal or the equitable category. To meet such cases the following rule of interpretation has been applied:

"Where a petition filed in the district court states facts sufficient to entitle plaintiff to both legal and equitable relief, and prays relief, a part of which only can be had at law, but all of which can be had in equity, the pleader will be held to have intended thereby to invoke the chancery, and not the common-law, powers of the court." (Ames v. Ames, 75 Neb. 473, syl. ¶ 1.)

Sometimes the nature of the proceeding may be such that upon stated facts the court may grant either legal or equitable relief, or both. That, however, is impossible when legal and equitable remedies are not concurrent, but are inconsistent because based on irreconcilable remedial rights. This court has said that a petition containing one cause of action for rescission of a contract, and another cause of action for damages based on affirmance of the same contract, contradicts itself, and is demurrable as not fairly furnishing ground for either kind of relief. (Neal v. Reynolds, 38 Kan. 432, 436, 16 Pac. 785.) In this instance there is no doubt about the nature of the action. Plaintiff could affirm the contract and pray for damages to be ascertained by a jury, or he could disaffirm and pray for equitable relief to be awarded by the court. He could not do both at the same time. The choice rested entirely with him; and he said he chose rescission.

Because the action was one for equitable relief, and plaintiff did not offer to do equity, the court sustained a demurrer to the peti-

tion. The plaintiff proceeded to amend his petition, and in doing so he took occasion to make express declaration of his purpose. The amendment follows:

"That plaintiff hereby tenders to the defendants and each and all of them a release and assignment of any interest he has in and to said stock for the purpose of securing a rescission of said pretended stock subscription and return of his said mortgage note and mortgage."

There was no allegation in the petition that the fifty shares of stock plaintiff received were of no value, or that he had relinquished possession of them to an agent of the defendants. Whether, however, the demurrer was properly sustained and the amendment was necessary is of no consequence now. Plaintiff submitted to the ruling. The only thing of importance is what the action was for, and there was no shuffling about it in the district court. The action was frankly and unequivocally one for rescission.

After the amendment, the petition still disclosed on its face that, while plaintiff wanted his note and mortgage back, he was keeping $200 in money which he had received for them in addition to the shares of stock.

In an action for rescission on the ground of fraud, the plaintiff must wash his own hands of money derived from the transaction. Generally, a plaintiff seeking rescission must place, or offer to place, the defendant *in statu quo* (*Jeffers v. Forbes,* 28 Kan. 174; *Bell v. Keepers,* 39 Kan. 105, 17 Pac. 785) ; and a petition which does not plead restoration, or offer of restoration, of what plaintiff received, is not only demurrable (*Neal v. Reynolds,* 38 Kan. 432, 16 Pac. 785), but is not good as against an objection to the introduction of evidence. (*The State, ex rel., v. Dennis,* 39 Kan. 509, 18 Pac. 723; *The State, ex rel., v. Williams,* 39 Kan. 517, 18 Pac. 727.) These early cases established the law in Kansas in accord with what then was and still is the American law on the subject, and the district court properly sustained a demurrer to plaintiff's amended petition on the ground it did not state facts sufficient to constitute a cause of action. The journal entry of the proceeding reads as follows:

"Now on this 17th day of May, 1924, this cause came on for consideration on defendants' second demurrer to plaintiff's petition, as amended, . . . and the court, being fully advised in the premises, sustains said demurrer on the ground that said petition does not show that plaintiff has tendered to defendants a return of $200 alleged to have been paid by defendant for accrued interest at the time defendant company received the mortgage described in said petition. . . . Thereupon, on application of plaintiff, leave is granted

to plaintiff to amend said petition by interlineation, by adding to the inter-
lineation made on page 9 the following words: 'and further tenders to the de-
fendants and each of them the $200 paid for accrued interest.' . . ."

By an amendment to the petition made early in the course of
plaintiff's striving to state a cause of action, he alleged that he dis-
covered the fraud on August 16, 1921. He finally succeeded in stat-
ing a cause of action on May 17, 1924. Defendants demurred on
the ground the action was barred by the two-year statute of limita-
tions. When a petition filed in due time fails to state a cause of
action for lack of an averment relating, as in this instance, to sub-
stance and not to form, and the averment is supplied by amendment
after the statute of limitations has run, the original petition does
not toll the statute, and the amendment does not relate to the time
of filing the petition so as to avoid the bar of the statue. *Powers v.
Lumber Co.*, 75 Kan. 687, 90 Pac. 254, is a well-considered case on
the subject. The principle applied is the same as when a new and
independent cause of action is injected into the petition after the
statute has run. In *Railway Co. v. Bagley*, 65 Kan. 188, 69 Pac.
189, the court, speaking by the present chief justice, said, following
a review of cases:

"Those cases differ somewhat from the case in hand, as in them the new
causes were added by amendment to other and distinct causes that had been
previously pleaded, while here the amendment sets up a cause of action where
none whatever had been previously alleged. The principle which ruled the
cited cases, however, applies. A cause of action pleaded by way of amend-
ment for the first time is new, and the departure is as great as the engrafting
of a distinct cause of action which is barred upon an original one that is not
barred." (p. 197.)

The result is, the district court erred, its judgment is reversed, and
the cause is remanded with direction to sustain the demurrer to the
petition as finally amended.

HOPKINS, J., not sitting.