No. 26,763.

G. O. Cleaves, *Appellant,* v. H. E. Thompson, D. R. Brooks, W. I. Funk, John Madden, Jr., S. S. Williamson, and R. S. Meeker, as Receiver for The Victory Mill and Elevator Company, *Appellees.*

### SYLLABUS BY THE COURT.

1. Contracts—*Rescission—Fraud and Misrepresentation—Waiver or Laches.* Where a party desires to rescind a contract on the ground of fraud and misrepresentations, he must, upon discovery of the facts, at once or within a reasonable time, announce his purpose and adhere to it.

2. Same—*Subscriptions for Stock—Ratification Preventing Rescission.* Where C subscribed for stock or units in a common law trust which was organized for the purpose of erecting a mill and elevator and carrying on the milling business, and where he afterwards visited the office of the trust on frequent occasions and was informed of its progress, and where the stockholders and directors of the trust later incorporated the business and issued stock in the corporation in exchange for and in lieu of the stock or units in the trust, and C upon notice, took his trust stock to the office of the corporation and received corporation stock in exchange therefor, and afterwards filed an action for damages on account of the alleged false and fraudulent representations made in procuring his subscription to the trust stock, he was not thereafter entitled to a rescission of his contract of subscription.

Appeal from Sedgwick district court, division No. 2; Thornton W. Sargent, judge. Opinion filed December 11, 1926. Affirmed in part and reversed in part.

*William Keith,* of Wichita, for the appellant.

*A. V. Roberts, John Madden* and *John Madden, Jr.,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Hopkins, J.: The action was one to rescind a subscription for stock in a common law trust and to recover the amount paid therefor. Plaintiff appeals from an order sustaining a demurrer by the defendant Madden to plaintiff's evidence, and Madden appeals from a judgment against him as trustee.

Briefly the facts are in substance as follows:

About June 7, 1919, defendants, Thompson, Brooks, Funk, Williamson and Madden, Jr., entered into an agreement and declaration of trust for the purpose of establishing a mill and elevator and

Cancellation of Instruments, 9 C. J. p. 1198 n. 24. Contracts, 13 C. J. pp. 616 n. 99, 617 n. 4; 6 R. C. L. 935 *et seq.* Corporations, 14 C. J. pp. 594 n. 30, 595 n. 31, 596 n. 35.

carrying on a general milling business at Wichita under the name of the Victory Flour Mills Company. Williamson was president, and Madden, secretary-treasurer. Shortly after its organization, an extensive campaign for promotion was begun. The trustees entered into a contract with Funk as fiscal agent for the placing of the stock. Funk hired his agents, sold stock and returned the proceeds to the trust, less his commission. The trust purchased a six-acre tract as a site for a mill and elevator. The purpose was to erect a flour mill with a capacity of 1,250 barrels of flour per day and an elevator with a storage capacity of 350,000 barrels. In August or September, 1919, it began operation of a grain department, setting aside $5,000 for that purpose. About December 1, 1919, the plaintiff was visited by M. L. Howe, a stock salesman, through whose solicitation plaintiff subscribed for ten shares of stock in the trust of the par value of $100 each, executing his note for $500. In 1920, it was decided to incorporate the business, and on July 2 a charter was secured under the name of "The Victory Mill and Elevator Company." On July 30 following, the business of the trust, comprising all of its assets and liabilities, was transferred to the corporation. This action appears to have been acquiesced in by all of the stockholders including the plaintiff (although he alleges otherwise), who took his trust stock to the company offices and exchanged it for stock in the corporation. The corporation having taken over the building site and other assets of the trust and assumed its obligations, continued the business it had established of buying and selling grain, but did not erect the mill and elevator on account of the high price of building materials. Plaintiff, having grown dissatisfied with the manner in which the corporation was proceeding with its business, on July 19, 1922, filed his petition alleging that the defendants, acting through Howe, had procured his subscription through false and fraudulent representations. He alleged that by reason of the premises he had been damaged in the sum of $500, for which amount he prayed judgment with interest, for cancellation of his note and such other and further relief as might be deemed just and equitable. Thereafter, he asked and was granted leave to file two amended petitions. The second is not set out, but in the third, filed March 8, 1924, he prayed for rescission of his contract of subscription, for cancellation of his stock and to recover $500 and interest.

On October 8, 1923, in another proceeding then pending against it,

R. S. Meeker was appointed receiver for the corporation, and on March 8, 1924, plaintiff asked leave to make the receiver a defendant. In his last amended petition, filed in March, 1924, he alleged that he had not been aware of the fraud practiced upon him by the defendants until the month of July, 1922. While judgment was for Madden personally, on his demurrer to the evidence the court rendered judgment against Meeker as receiver and all the other defendants as trustees.

The plaintiff maintains that the court erred in its application of the law to the facts so far as they related to the defendant Madden; in holding that the evidence warranted a finding that Madden received no benefits from the transaction in question; in holding that it was necessary for Madden under the allegations of plaintiff's petition to have received financial or direct benefit from the transaction in question in order to be liable for the alleged fraud practiced upon the plaintiff.

The defendant Madden contends that the plaintiff is not entitled to the remedy of rescission; that the representations made in the sale of the stock were true; also that they were matters of opinion and therefore nonactionable; that there was no evidence of agency as against him; that plaintiff had no right to recover because the corporation was not made a party defendant and because plaintiff's cause of action was barred by the statute of limitations.

There are several reasons in our opinion why the plaintiff must fail. Discussion of all of them is, however, not necessary. In his first petition, he alleged and sought to recover damages. In his last amended petition, he tendered back his stock and sought to rescind his contract of subscription. Having elected to sue for damages, he was not in position to later demand rescission. In *Beneke v. Bankers Mortgage Co.*, 119 Kan. 105, 107, 237 Pac. 932, it was said in the opinion:

"A person fraudulently induced to buy and pay for property delivered to him has two remedies, one legal and one equitable. He may affirm the contract and sue for damages, or he may disaffirm and sue for rescission. If he affirm, he keeps the property, the seller keeps the consideration paid, and the buyer recovers damages for the difference in value between what he received and what he should have received. If he disaffirms, he seeks restoration of the status existing when the sale was made. Affirmance and disaffirmance are contradictory of each other. The sale cannot stand and at the same time be set aside. Because the remedy by way of damages rests on affirmance, and the

remedy by way of rescission rests on disaffirmance, the two are inconsistent and incompatible. Resort to one excludes resort to the other, and in choosing a remedy it is the first decisive step which counts." (p. 107.)

Rescission is an equitable remedy designed to afford relief from contracts entered into through mistake, fraud or duress. Ordinarily, the nature of relief asked in such cases must be such as to place the parties in their original situation. Where one with knowledge of facts entitling him to a rescission of the contract, afterwards without duress ratifies it, he is not entitled to have it canceled. Ordinarily an express ratification is not necessary in order to defeat the remedy of rescission. Acts or conduct, inconsistent with an intention to avoid it, or in recognition of the contract, have the effect of an election to affirm it. In the instant case the evidence shows that the plaintiff on numerous occasions during 1920 visited and looked over the site of the proposed mill and elevator and could see that nothing was being done toward its construction except the work of excavation. For a period of six months he visited the site approximately every thirty days. Upon numerous occasions he visited the office of the company and talked with the defendants and was told that no building was in progress. Having all this information, he took his certificate of stock in the trust to the offices of the corporation and secured in exchange therefor stock in the new company. Nearly two years thereafter, having continued in the meantime to visit the company's office at intervals, he filed his action for damages. From all this, it must appear that if any fraud was practiced on the plaintiff in the sale to him of the stock in question, he voluntarily and by his own conduct waived the fraud and ratified the contract. In 9 C. J. 1198, the rule is thus stated:

"Where a party, with knowledge of the facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm. This doctrine seems to rest not upon the principle of a new contract between the parties, nor yet upon the ordinary principle of estoppel in pais, but rather upon a distinct principle of public policy, that all justice or equity requires for the relief of a party having such cause to impeach a contract, is that he should have but one fair opportunity, after full knowledge of his rights, to decide whether he will affirm and take the benefits of the contract, or disaffirm it and demand the consequent redress. Any other rule would be regarded as unjust, even toward the party guilty of the wrong out of which grows the right to rescind."

Cleaves v. Thompson.

In *Bell v. Keepers,* 39 Kan. 105, 17 Pac. 785, it was held that if after discovery of the fraud in a contract the party imposed upon, without objection, pays several installments upon it, he waives the fraud and affirms the contract.

In *McLean v. Clapp,* 141 U. S. 429, 35 L. Ed. 804, it was held that—

"Where a party desires to rescind a contract upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred."

In *Scott v. Empire Land Co.,* 5 F. (2d) 873, it was held that—

"A party who desires to rescind a contract for fraud, must, at once on discovery of the fraud, announce his purpose to rescind." (See, also, *Neal v. Reynolds,* 38 Kan. 432, 16 Pac. 785; *State, ex rel., v. Dennis,* 39 Kan. 509, 18 Pac. 723; *State, ex rel., v. Williams,* 39 Kan. 517, 18 Pac. 727; *Mills v. City of Osawatomie,* 59 Kan. 463, 53 Pac. 470; *Trust Co. v. McIntosh,* 68 Kan. 452, 75 Pac. 498; *Elwood v. Tiemair,* 91 Kan. 842, 139 Pac. 362; *Thompson v. Millikin,* 93 Kan. 72, 143 Pac. 430; *Sell v. Compton,* 91 Kan. 151, 136 Pac. 927; *Sylvester v. Lynde,* 113 Kan. 450, 215 Pac. 305; *Morton v. Brinks,* 114 Kan. 319, 219 Pac. 527; 13 C. J. 616; 14 A. & E. Encyc. of L. 159, 161; *Schafroth v. Ross,* 289 Fed. 703.)

Other questions raised in the briefs need not be discussed. The judgment in favor of John Madden, Jr., personally is affirmed. The judgment against him as trustee is reversed and the cause remanded with instructions to enter judgment for him as trustee.