No. 33,294

MAUDE TURNER, *Appellee,* v. HOLLY JARBOE, HARRIET JARBOE et al., *Defendants;* HOLLY JARBOE and HARRIET JARBOE, *Appellants.*

(64 P. 2d 26)

Opinion filed January 23, 1937.

*J. H. Brady* and *N. E. Snyder,* both of Kansas City, for the appellants.
*David F. Carson* and *Carl W. Fincke,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This appeal is from an order overruling the motion of two of the defendants to strike certain allegations from the second amended petition and from an order overruling their demurrer to the petition. A brief statement of the pleadings filed and rulings thereon will enable us better to understand the questions argued.

On June 10, 1935, plaintiff filed her petition in the district court of Wyandotte county. The principal defendants were Holly Jarboe, Harriet Jarboe and Leo McShane. Plaintiff alleged that in December, 1934, these defendants, wrongfully conspiring to defraud plaintiff of her property, falsely represented to her that Holly and Harriet Jarboe, hereinafter called defendants, owned a described property known as the Hollywood Hotel in Kansas City, Mo., and the furnishings therein, which were clear of encumbrance; that the whole was worth $23,000; that it was being and for many years had been operated at a profit upon that value; that the hotel was fully occupied with paying tenants; that it was in good condition, and that the furnishings were what she had seen in the hotel a year prior thereto, all of which was represented as being in good condition. They proposed to trade this property for certain property owned by plaintiff. Upon her request to see and investigate the hotel property, they assured her she could rely upon their statements respecting the property, and relying thereon she exchanged therefor certain property she owned, namely, certain real property in Wyandotte county, thirty-four shares of stock in certain building and loan associations of Wyandotte county, executed a note for $2,000 secured by a mortgage on certain real property in Wyandotte county, and another note for $1,000 secured by a chattel mortgage on certain personal property in that county, all of the value of $6,000; that the representations so made by defendants and McShane were false in this, that the hotel property was not of the reasonable value of $23,000 and was not of sufficient value to pay the encumbrance of $16,000 against it; that the hotel property was not being, and had not been, operated at a profit, but had been operated at a loss of more than $10,000 since 1925; that instead of being occupied by paying tenants it had been filled with tenants who paid nothing, and who were expected to pay nothing; that this was done for the purpose of deceiving plaintiff, and that more than one third of them moved from the property soon after the exchange was made. It was further alleged that the hotel was not in good condition, as represented, but. was out of necessary repairs to the extent of $2,000, and that much of the furniture represented as being in the hotel had been removed, and that the furniture therein was much inferior to that as represented. Among the defendants named were the two building and loan associations, the stock of which plaintiff had transferred, and W. C. Reynolds, a

resident of Kansas City, Mo., who had been named as trustee in the mortgages executed by plaintiff. It was alleged that the defendants, other than the corporations named and W. C. Reynolds, were insolvent, and plaintiff feared they would transfer the Wyandotte county real property and the shares of stock and mortgages which had been executed by plaintiff. Plaintiff asked that all these instruments be canceled and that defendants be directed and ordered to make the plaintiff a deed for the Wyandotte county property. She tendered a deed to the Hollywood hotel property and bill of sale for the furnishings therein. It was further alleged that because of the willful, false and fraudulent representations made defendants should be required to pay the expense of the action, including reasonable attorneys' fees and rents they had collected from the Wyandotte county property, all amounting to the sum of $4,500. The register of deeds of Wyandotte county was made a party defendant, and the court was asked to enjoin him from entering of record any assignment of the mortgages executed by plaintiff or deed from defendants for the Wyandotte county property. Plaintiff also asked to enjoin the building and loan associations from transferring the stock on their books. The prayer was for judgment against defendants for $4,500, that the deed executed by plaintiff to defendants for the Wyandotte county property be canceled, and that her title thereto be quieted; that defendants be required to surrender the $2,000 and the $1,000 notes and the shares of stock; that appropriate restraining orders be issued, and for such other and further relief as to the court may seem just.

Personal service of summons was obtained upon the defendants in Wyandotte county. Holly Jarboe and Harriet Jarboe were nonresidents of the state and service by publication was had as to them. Thereafter, and on September 23, they filed the following motion:

"Come now the defendants, Holly Jarboe and Harriet Jarboe, for the purposes of this motion and this motion only, and for no other purpose, and in no way submitting to the jurisdiction of this court, but at all the times objecting and excepting thereto, and move the court to quash and set aside the purported service upon them purporting to have been made upon them by publication, which publication ran in the Kansas City *Kansan*. Because this court has no jurisdiction of the persons of these defendants or either of them. Because this court has no jurisdiction of the subject matter involved in this action for the following reasons, to wit: That these defendants, as shown by plaintiff's affidavit for publication service, are nonresidents of the state of Kansas, being residents of the state of Missouri. That no personal service of

summons has been had or obtained upon the persons of these defendants or either of them. That no basis exists or has existed for service upon these defendants or either of them by publication."

Upon the hearing of this motion, November 21, the journal entry recites that the court—

". . . finds, that said defendants, Holly Jarboe and Harriet Jarboe, should not be compelled to answer purely claims *in personam,* but that insofar as the action is one *in rem,* that the service by publication is good and should be sustained, and that if the plaintiff elects to withdraw from her petition all of her claims which is purely a claim *in personam,* that the motion should be overruled; and thereupon in open court plaintiff elects to withdraw all claims of a personal nature, and the court finds, that upon such election, said motion should be denied. It is therefore by the court ordered: That said claims *in personam* are, by reason of the election of the plaintiff, stricken from the petition and that said motion be and the same is hereby overruled."

Whereupon the original petition was amended by plaintiff striking therefrom all claims *in personam.* No complete amended petition was filed, nor was the original petition then refiled, but it was permitted to remain as amended with all allegations *in personam* stricken.

On December 9 defendants filed a motion for an extension of time in which to plead. This was heard and allowed by the court December 16, the parties appearing by their respective attorneys. On December 30 defendants filed a motion for an order requiring plaintiff to make her amended petition more definite and certain, in fourteen particulars, in substance as follows: (1) In what manner it is claimed defendants profited by the alleged fraud; (2) whether the alleged fraudulent representations were made by Holly Jarboe, Harriet Jarboe, or Leo McShane, or all of them, and the time and place; (3) whether it is claimed the hotel had been packed by the defendants, and if so, the number of tenants, and how many moved out; (4) whether the furniture was moved by defendants, or someone else; (5) in what manner defendants prevented plaintiff from investigating the hotel property; (6) whether plaintiff demanded an abstract of the hotel property, or made an examination of the title, and if there were any claimed misrepresentations as to the title; (7) whether the exchange of property was upon an oral or written agreement, and if a written one, that a copy be attached; (8) whether that agreement was made in Kansas or Missouri, and where it was to be performed; (9) whether the alleged fraudulent representations were made to plaintiff in Kansas or Missouri, or else-

where; (10) whether plaintiff had examined the hotel property before the consummation of the transaction; (11) whether there is a claimed fiduciary relationship between plaintiff and defendants, and if so, its nature; (12) whether any of the agreements were in writing, and if so, that copies be attached; (13) whether any of the alleged false representations were in writing, and if so, that copies be attached; and (14) whether plaintiff is a married woman, and if so, the name of her husband. This motion was considered by the court and overruled January 6, 1936.

On February 24 defendants filed a demurrer to the amended petition upon the ground: (1) The court has no jurisdiction of the person of the defendants Holly Jarboe and Harriet Jarboe; (2) The petition does not state facts sufficient to constitute an action in favor of plaintiff and against these defendants.

At the hearing on this demurrer, June 10, it was stricken from the files upon the ground that it was moot, for the reason that after it was filed plaintiff had filed a second amended petition. It appears plaintiff had not given notice to defendants of this filing, and they had not pleaded thereto, and the court on its own motion gave them twenty days to plead thereto.

The second amended petition, filed March 9, 1936, reincorporated therein the allegations and prayer for personal judgment against defendants in the sum of $4,500, which had been stricken out by the court November 21, 1935.

On June 30, 1936, the defendants filed a motion which recites that they—

". . . appear specially and for the sole purpose of challenging the jurisdiction of this court and respectfully move the court for an order striking from plaintiff's second amended petition all the allegations and averments of paragraph nine and all other allegations and averments of other paragraphs setting up or based upon claims for personal judgment as well as the portion of the prayer demanding a personal judgment, for the following reasons: (1) That the court has no jurisdiction of the subject matter and the parties of this action save by service by publication which will not support a judgment for claims are *in personam*. (2) The plaintiff is now estopped to insert in her second amended petition or any other petition claims which are purely *in personam* for the reason that heretofore on the decision of the motion of these defendants to quash service herein on the ground that the court had no jurisdiction of claims *in personam*, which decision was rendered November 21, 1935, overruling the motion of these defendants to quash upon the election of plaintiff in open court to withdraw from her petition all of her claims of a personal nature; thereupon the court ordered all claims *in personam* stricken

from the petition. In reliance upon said election these defendants then filed motion for extension of time in which to plead and a motion to make more definite and certain."

This was considered by the court and overruled July 16. On August 5 defendants filed a motion to make the second amended petition more definite and certain, which was identical with the motion to make the amended petition more definite and certain, filed December 30, 1935, and overruled January 6, 1936. This motion was withdrawn by leave of court August 13, 1936. Also, on August 5, 1936, defendants filed a demurrer to the second amended petition for the reasons: "(1) The court has no jurisdiction of the persons of these defendants; (2) Several causes of action are improperly joined; (3) The second amended petition does not state facts sufficient to constitute a cause of action against these defendants."

This was considered and overruled by the court August 13, 1936.

Defendants appealed from the order and judgment of the court of July 16, 1936, overruling their motion to strike from plaintiff's second amended petition all allegations and averments setting up or based upon claims for personal judgment, as well as the portions of the prayer demanding personal judgment, and from the order and judgment of August 13, 1936, overruling the demurrer to the second amended petition, and from all other mesne and final orders made in the cause.

In the main the petition is drawn for rescission; it contains all essential allegations for such an action. In it there are allegations of damages and a prayer for a money judgment. When plaintiff found she had been defrauded, as she thought, she had one of two remedies open to her; namely, an action to rescind, or an action for damages. These actions differ fundamentally in several respects. Rescission seeks to hold property or to recover property previously parted with, or its value if it cannot be recovered. In damages, plaintiff in effect concedes the title to the property has passed, no effort is made to recover it, and a money judgment alone is sought. Because of the fundamental differences in these remedies they cannot be commingled. The petition must be drawn on a definite theory. (*Sluss v. Brown-Crummer Inv. Co.*, 137 Kan. 847, 22 P. 2d 965.) Neither can the action be brought first in rescission and then be changed to an action for damages, or *vice versa*. (*Ireland v. Waymire*, 107 Kan. 384, 191 Pac. 304; *Beneke v. Bankers Mortgage Co.*, 119 Kan. 105, 237 Pac. 932; *Hamilton v. McGinnis*, 119 Kan.

719, 241 Pac. 690.) In such a situation plaintiff may elect which remedy he cares to pursue, but the one elected must be followed throughout. The allegation for damages, therefore, had no place in the original petition, or in the second amended petition. This does not mean, however, that in rescission the court would have no authority, under any circumstances, to render a money judgment. There are circumstances under which a money judgment might be rendered if the court had jurisdiction of the person of defendants. From the allegations of plaintiff's petition it is a little difficult to understand clearly the items which make up the $4,500 for which plaintiff asks a personal judgment. Apparently one item is the rents collected by defendants from the Wyandotte county real property conveyed to them by plaintiff. Perhaps that might be awarded in rescission as necessary to complete equity, but if so it could be done under the general prayer for equitable relief. The remainder of the amount for which a personal judgment was sought, and perhaps all of it, appears to be damages of different kinds alleged to have resulted from the willful fraud of defendants. This should have been stricken from the second amended petition, or, if not, the demurrer thereto should have been sustained.

Defendants contend plaintiff is now estopped from claiming relief *in personam* against them in the second amended petition for the reasons that at the hearing of the motion to quash the service, November 21, 1935, the court held the service to be good insofar as plaintiff sought relief *in rem*, but not to be good for the purpose of enabling plaintiff to obtain relief *in personam*, and ruled: "If the plaintiff elects to withdraw from her petition all of her claims which is purely a claim *in personam*, that the motion should be overruled," and that plaintiff then, in open court, elected to withdraw all claims of a personal nature and did amend the original petition by deleting them therefrom. Just what words were deleted is not shown, but we presume they were the allegations and prayer for damages in the sum of $4,500. Defendants contend that, relying upon these matters being taken out of the petition, they pleaded to the petition and would now be substantially prejudiced if the matters so deleted were set up in a second amended petition, citing *Neal v. Reynolds*, 38 Kan. 432, 16 Pac. 785; *Zimmerman v. Barnes*, 56 Kan. 419, 43 Pac. 764. These cases are to the effect that it is improper for a plaintiff to get a nonresident of the county or of the state into court to litigate the status of property situated in the county, and then by an

amendment to the petition seek to litigate a claim which is purely personal in its nature. The reasoning of these cases is applicable here. This is an additional reason the allegations respecting damages and the portion of the prayer relating thereto should have been stricken from the second amended petition.

At the time of the ruling on the motion to quash the service, November 21, 1935, the court was not ruling upon motions or pleadings which had not then been filed. Later, defendants moved for additional time to plead, moved to make the petition more definite and certain in many particulars, and demurred to the petition on the ground, among others, that the court had no jurisdiction of the subject matter of the action. This was voluntary upon their part, and in doing so they made a general appearance and submitted themselves to the jurisdiction of the court for the purpose of litigating the action in rescission, but not for the purpose of defending a personal action for damages.

The judgment of the court below is reversed with directions to sustain the demurrer to the second amended petition, and that such further action as may be taken in the case be in harmony with this opinion.