No. 34,354

MAUDE TURNER, *Appellant,* v. HOLLY JARBOE, HARRIET JARBOE, W. C. REYNOLDS, THE PROGRESSIVE BUILDING AND LOAN ASSOCIATION, THE ANCHOR BUILDING, SAVINGS AND LOAN ASSOCIATION, LEO McSHANE, and L. C. MADDOX, as Register of Deeds of Wyandotte County, *Appellees.*

(100 P. 2d 675)

Opinion filed April 6, 1940.

*David F. Carson, George P. Norton* and *Carl W. Fincke,* all of Kansas City, for the appellant.

*J. H. Brady* and *N. E. Snyder,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This is the second appearance of this case in this court. (*Turner v. Jarboe,* 145 Kan. 202, 64 P. 2d 26.) In the former appeal we had to consider the sufficiency of plaintiff's petition in which the plaintiff, Mrs. Maude Turner, alleged that through false and fraudulent representations of the defendant, Mrs. Harriet Jarboe, on which she relied, she was induced to exchange certain real estate and personal property for a hotel property and its furnishings in Kansas City, Mo.

Summarizing the contents of plaintiff's original petition, which she filed on June 10, 1935, it was alleged that on December 20, 1934, the contract for the exchange of properties was effected; that on January 5, 1935, plaintiff took possession of the Missouri property known as the Hollywood Hotel, a three-story structure of thirty-nine rooms, together with its furnishings; that the hotel property

and the condition of the business thereat were greatly inferior to the representations which the defendant, Mrs. Jarboe, had made to plaintiff and on which plaintiff had relied in making the contract of exchange; that plaintiff tendered to defendant a deed and bill of sale to the hotel property, and plaintiff asked—

"That all of said transactions, conveyances and written instruments be surrendered, canceled and held for naught, and that said defendants, Holly Jarboe and Harriet Jarboe, should be required to pay the expenses of this suit, including a reasonable attorneys' fee for and on account of the willful, malicious, false and fraudulent statements hereinbefore alleged to have been made by them, and that the plaintiff has been compelled to and has paid out since the transfers above mentioned and before she discovered the fraud that had been practiced upon her, the sum of $1,409.58, or in all that plaintiff have a judgment against said defendants, Holly Jarboe and Harriet Jarboe and Leo McShane, for the sum of $3,500."

Plaintiff also alleged that she had been compelled to make certain expenditures for which she claimed the right of recovery. Her petition closed with a prayer for judgment for $4,500, and that the deeds executed by her to Mrs. Jarboe be canceled and that she be required to reconvey to plaintiff the properties she had received in the contract of exchange.

The action was begun on June 10, 1935. Plaintiff's petition was met by a demurrer, which the trial court overruled, and on appeal that judgment was reversed—this court holding that the petition was drawn on two inconsistent theories, one for rescission and another for damages. Section 2 of our syllabus reads:

"A petition in an action for rescission of an exchange of property on the ground of fraud contained allegations of damages because of the fraud and included a prayer for a money judgment therefor. *Held,* these allegations and that portion of the prayer should have been stricken from the petition on motion, and if that was not done a demurrer to the petition should have been sustained."

When the cause was remanded to the district court, plaintiff filed a third amended petition on March 8, 1937, which in large measure conformed to her first petition except that so much thereof as tended to plead a cause of action for a money judgment for damages was eliminated.

To this petition defendants answered with a general denial, invoked the statute of limitations, pleaded laches, and—

"Further answering, the defendants state that immediately following the execution of said written contract, . . . plaintiff went into possession of the property conveyed to her by these defendants pursuant to said written

contract; that plaintiff proceeded to operate said hotel property, collect rents, conduct said business, and perform all other conditions required of her to be performed by said written contract until after June 10, 1935, when the original petition was filed in this action, and if any of the grounds upon which plaintiff bases this action existed, all of which these defendants deny, the express agreement, conduct and action of plaintiff in entering into possession of said premises, operating said business, collecting and retaining the rents from said hotel and all other acts and conduct consistent with an affirmance of said contract, until after the time her original petition was filed in this action on June 10, 1935, constitute a waiver thereof and the plaintiff is now barred and estopped from maintaining this action.

"Further answering, these defendants state that the plaintiff cannot now make good the claimed tender contained in paragraph 9 of her third amended petition for the reason that she does not now have title to either the real or personal property mentioned therein."

Plaintiff filed a reply in which, among other allegations, she alleged that—

"She is not guilty of laches and has not waived any of her rights herein for the reason that she did not discover the fraud that had been committed upon her, . . . nor did she know nor learn of the real value of the property, which had been misrepresented to her, and which was the property defendants traded to her as a part of the consideration for the deeds that they obtained from her to the property she seeks to recover by her petition herein, and she did not know and did not learn of the exact situation until about the time she filed this suit, and that as soon as she did learn of the fraud that had been committed upon her, as soon as she could thereafter do so, she brought an action to set aside the conveyances executed by her and tendered back to the defendants all that she had received from them."

On these issues the cause was tried.

Plaintiff testified when she was negotiating for the hotel she was not permitted to see but a few rooms and was assured by defendant that the furniture in all the rooms was in good shape, that the hotel was full of good-paying tenants who had been there a long time and that there was a list of tenants waiting for vacancies, that the income of the hotel was $1,000 per month, and that the property which was mortgaged for $16,000 was worth $23,000, and that plaintiff relied on these representations when she made the contract of exchange.

Plaintiff further testified that she took possession of the hotel on the evening of January 5, 1935, and discovered that two truck loads of the furniture in the hotel had not belonged to defendant and had been taken out. She also discovered that the hotel furniture was in bad shape, not as it had been represented. Within two weeks

about one-third of the tenants moved out, and there was no waiting list. She testified:

"Oh my! They moved so fast—There was hardly anyone there in January, after the first two weeks."

She also testified:

"I tried, after I had been in the hotel a while, to contact Mrs. Jarboe. I had been there for about two months. I called her up on the telephone and asked her if she would not come down and talk to me. She said she was awfully busy. I asked her if she could not come down when she wasn't quite so busy. She said she was awful busy, and then I said: 'Well, then, make an appointment and let me come out to your house and talk to you.' 'No,' she said, 'that won't do.' She said, 'I don't want you out here.' I got to talk to her just once after I got into this hotel. I told her, 'Mrs. Jarboe, this place is emptying up so fast.' She said, 'Mrs. Turner, don't pay any attention to it, because,' she said, 'it will fill right up again.' "

Plaintiff also gave testimony touching the income of the hotel—that she only had occupants for about 15 or 16 rooms of the hotel, that the income was about $45 per week, and the expenses were about $156 per month. Other witnesses testified in plaintiff's behalf touching the poor condition of the hotel and its furnishings, that for three years immediately prior to the exchange of properties the hotel had been operated at a loss, that its outgoing tenant had unavoidably defaulted in the payment of rent to the extent of $3,500, and that defendant had said to the outgoing tenant, "I've got to get rid of this place, I've got to get rid of it or trade it for something." A witness who had worked in the hotel as janitor before and after plaintiff took charge testified as to the furnishings:

"I know the Hollywood Hotel. I went there in the spring of 1934 and got through in the spring of 1935. . . . The beds, the iron part of it was in pretty good condition, but the tickings were soiled. The sheets were torn and patched up, the pillowcases were the same, the covers were nothing extra to speak of. The rocking chairs and straight-backed chairs were rickety and the arms were loose and the spindles were loose. The legs would come out if they were tipped back."

Touching the condition of the hotel itself, the same witness testified that the heating system was in bad condition, that the hot-water coils leaked, and that he had trouble with the plumbing and the faucets. "I couldn't tamper with them for fear if I put any pressure onto them, something would snap."

On May 21, 1935, plaintiff sent a communication to defendant notifying her that she rescinded the contract of December 20, 1934, because of false representations defendant and others had made to

her and on which she relied, and plaintiff therein stated that she thereby tendered a deed to the hotel property and tendered also a bill of sale of all the chattel property she had received, and demanded a return and surrender of all the property, real and personal, plaintiff had delivered to defendant in exchange for the hotel.

This communication was ignored, and on June 10, 1935, plaintiff commenced the action in which her petition was held demurrable in this court in *Turner v. Jarboe,* supra.

Following the commencement of the action, plaintiff remained in the hotel until June 22, 1935, at which time she abandoned it. On cross-examination she testified:

"Q. You walked out on June the 22d, didn't you? A. Yes.

"Q. You left it then? A. Yes, sir; I left it.

"Q. What happened to the furniture, you know not? A. No; I don't know."

Plaintiff also testified that she was about fifty years of age and had been born and reared in a rooming house, that she operated hotels and rooming houses all her life.

It was also developed and admitted that the hotel property was sold in foreclosure of a trust deed sometime in the latter part of 1935, and had passed completely out of plaintiff's control.

At the conclusion of plaintiff's evidence defendant's demurrer thereto was sustained, and this ruling is the basis of this appeal.

Counsel for plaintiff express their uncertainty as to the particular ground on which the demurrer was sustained. Be that as it may, if the ruling is correct, the trial court's reasons for its ruling are not very important. (*In re Estate of Dennis,* 146 Kan. 121, 126, 68 P. 2d 1083.)

It is a familiar rule of law that a person who has been duped into the making of a contract must act promptly and effectively in order to take advantage of his right to rescind it. Once he has been apprised of sufficient facts to put him on inquiry as to whether he was a victim of misrepresentation or fraud which induced him to make the contract, he cannot let the matter drift, nor can he hesitate for long between two courses of action, one for rescission and another for damages. (*Sylvester v. Lynde,* 113 Kan. 450, 215 Pac. 305, and citations.) In *Beneke v. Bankers Mortgage Co.,* 119 Kan. 105, 237 Pac. 932, it was said:

"A person fraudulently induced to buy and pay for property delivered to him has two remedies, one legal and one equitable. He may affirm the contract and sue for damages, or he may disaffirm and sue for rescission. If he

affirm, he keeps the property, the seller keeps the consideration paid, and the buyer recovers damages for the difference in value between what he received and what he should have received. If he disaffirm, he seeks restoration of the status existing when the sale was made. Affirmance and disaffirmance are contradictory of each other. The sale cannot stand and at the same time be set aside. Because the remedy by way of damages rests on affirmance, and the remedy by way of rescission rests on disaffirmance, the two are inconsistent and incompatible. Resort to one excludes resort to the other, *and in choosing a remedy it is the first decisive step which counts."* (p. 107.)

In *Cleaves v. Thompson,* 122 Kan. 43, 251 Pac. 429, it was said:

"Where a party desires to rescind a contract on the ground of fraud and misrepresentations, he must, upon discovery of the facts, at once or within a reasonable time announce his purpose and adhere to it." (Syl. ¶ 1.)

The equitable remedy of rescission is only open to the diligent. The time within which an action for rescission may be commenced is governed by the matter of plaintiff's diligence rather than by some provision of the statute of limitations. It must be commenced promptly or it will be demurrable. In *Wood v. Staudenmayer,* 56 Kan. 399, 43 Pac. 760, it was said:

"A rescission of the contract for the purchase of land and the cancellation of the conveyances, on the ground that the representations of the vendor were false and fraudulent, is an extraordinary power of equity, . . . *and the right to disaffirm the contract must be exercised promptly after the discovery of the fraud."* (Syl. ¶ 3.)

To the same effect was *Trust Co. v. McIntosh,* 68 Kan. 452, 75 Pac. 498; see, also, Laches, in 2 Bouvier, Rawle's 3d revision, 1820-1823.

The present action for rescission cannot be said to have been begun until the filing of plaintiff's third amended petition on March 8, 1937, which was two years, two months and three days after plaintiff took possession of the hotel. The very night she took possession she had notice that some of the representations made to her were false—that she did not get all she had bargained for. Two loads of furniture were gone. She was an experienced hotel keeper and the condition of the furniture would be obvious to her as soon as she looked at it. Indeed, one of the means whereby she was duped into the bargain, as she alleged and testified, was that she was put off when she desired to inspect the hotel and furnishings before she traded for it. Defendant had assured her that such an inspection was not necessary, that it was all in as good a condition as what she had seen some time previously, which representation was not true.

No significance can be attached to the letter plaintiff sent to defendant on May 21, 1935, signifying her intention to rescind, and demanding a return of the real and personal property plaintiff had delivered in exchange for the hotel. She did not follow up that expressed intention to rescind for nearly two years thereafter.

Counsel for plaintiff seek to give legal potency to the petition which she did file on June 10, 1935, but since it was held demurrable because of misjoinder of inconsistent causes of action, it availed naught to excuse laches nor to interrupt the running of the statute of limitations. Not until plaintiff had definitely pleaded a cause of action for rescission without cluttering it up with matters of alleged damages can it be said that she made her election to sue for rescission and not for damages. That election was made on March 8, 1937. Until that date plaintiff could not be said to have chosen whether she would prosecute a cause of action for rescission or one for damages. Her defective petition of June 10, 1935, did not serve to toll the statute of limitations. In *Clark v. Wilson*, 149 Kan. 660, 88 P. 2d 1070, it was said:

"Where a demurrer to a petition is sustained on the ground that the petition does not state a cause of action, the filing of such petition does not arrest the running of the statute of limitations, and the filing of an amended petition does not relate back to the date of the filing of the original petition so as to deprive the defendant of the defense of the statute." (Syl.)

See, also, *Malone v. Young*, 148 Kan. 250, 264, 81 P. 2d 23.

But whether the time in which plaintiff was entitled to commence her action be measured by the equitable rule of laches or by the two-years provision of the statute of limitations pertaining to an action for relief on the ground of fraud (G. S. 1935, 60-306, *Third*), its commencement by the filing of her third amended petition on March 8, 1937, for relief on the ground of fraud practiced on her on and prior to January 5, 1935, of which fraud she began to be aware on that date, and of which she was sufficiently apprised within two weeks thereafter, was too late.

Some other questions are argued in the briefs, but they do not require discussion.

The judgment is affirmed.

ALLEN, J., dissents.