William V. SCOTT and Edna L. Scott,
Respondents,

v.

Cecil C. JONES, Appellant.

No. 22750.

Kansas City Court of Appeals.
Missouri.

April 4, 1960.

Joseph S. Levy, Paul Margolis, Jr., Kansas City, for appellant.

Foust & Lyons, Arthur T. Stephenson, Kansas City, for respondents.

MAUGHMER, Commissioner.

Plaintiffs had a verdict and judgment in the sum of $2,500 as damages arising from alleged fraud and false representations respecting a residential property which plaintiffs purchased from defendant. Defendant has properly perfected his appeal.

About May 1, 1950, defendant, who is the owner and operator of a furniture, jewelry and appliance business, with the services of general contractors, built two one-family residences with the intention of selling them. These houses were located at Lake Quivira, Kansas City, Kansas. Each was constructed basically from blue prints or plans furnished by Wadsworth Custom-crafted Homes, but with various

alterations and enlargements. These changes included the addition of a double garage, basement, a basement fireplace and a change in the furnace location which moved it laterally further from the chimney. The upstairs part of the houses were also enlarged.

After the house located at 211 Terrace Trail was completed, defendant furnished it from his store and with his family occupied the premises pending its sale. On Monday, October 9, 1950, the defendant, with Mr. Jack Crowe, a real estate sales agent with whom he had listed this house for sale, showed it to plaintiff, William V. Scott, who was a prospective buyer. Mr. Scott was told by the defendant that he had used the downstairs fireplace, had burned wood in it and "that it drew perfectly"; that the furnace operated efficiently and was adequate to heat the whole house. On October 11, 1950, plaintiffs signed a purchase agreement to buy the house for $22,500 and the sale was later completed.

Mr. Sam Rapschutz, who had installed the furnace, said its location being some distance away from the chimney, required using elbows in the pipe which resulted in obstruction to the free passage of air. He stated that the oil hot water heater was hooked into the furnace flue, which made for inefficient operation of both the furnace and the heater. Shortly after the plaintiffs moved in, Mr. Rapschutz got a call from them. He went to the house and found that the furnace was out. He pushed the reset button and the furnace exploded, burning his face and hands so badly as to require hospitalization. This witness denied, however, that the installation was improper or unsafe, although early in 1951, he replaced the oil hot water heater with an electric heater.

Mr. William V. Scott, one of the plaintiffs, described his meeting on Monday, October 9, 1950, with defendant and Mr. Jack Crowe at the house. He said the three of them walked through the house and basement; he was told the furnace "would more than adequately heat the house"; that Mr. Jones said the fireplaces (we are not concerned with the upstairs fireplace) were wood-burning, had been used by him and worked properly; that the basement was well built and "we would never have to worry about leaking or anything of that type". The parties spent some two hours in looking over the place. Two days later on October 11, 1950, plaintiffs purchased the property and moved in about January 12, 1951. Mr. Scott said they found the windows greasy on the inside and there was no hot water. He said they tried to light the water heater but it would go out. Two days later they came home and there was no heat. They found soot all around the furnace. Mr. Scott was unable to get the furnace started so called Mr. Rapschutz, who came out and worked on it. The result was an explosion. Rapschutz was injured and the whole house—drapes, walls and windows—were covered with soot. The top of the oil hot water heater and the regulator valve were blown off. Mr. Rapschutz was injured and was taken to the hospital, but workmen from his company, Quality Furnace Company, repaired and reassembled the furnace and apparently it functioned until in February, 1952, there was another explosion with about the same results. This time a Mr. Caswell was called to make repairs. Plaintiffs had planned a party for Thanksgiving day, 1953, and they lighted the fireplace a few days before to try it out. Mr. Scott said it "flooded the whole downstairs with smoke". Again Mr. Caswell was called and Mr. Scott said he learned from Mr. Caswell at that time and for the first time that there was only one flue for both the furnace and the downstairs fireplace. He testified that in the spring of 1951, the basement walls leaked and this continued "whenever we had rain of any consequence".

Mr. Caswell, a builder who was called by plaintiffs to repair both the furnace and fireplace, testified. He qualified as an expert in the construction and servicing of

oil burning furnaces and fireplaces. In January, 1952, he found that the furnace "had exploded and blown up" and that "the flue pipe was blown off and parts of the furnace were out, disconnected, taken apart". He cleaned the flue, reassembled the furnace and expressed his opinion that the explosion had been caused by faulty ignition. He changed the ignition from intermittent to constant. He did not examine the chimney construction at that time. Mr. Caswell was called again in November, 1953. On this occasion the basement fireplace was smoking and was not usable. He examined the chimney and found the flue tiles on both the right and left sides were not open, and were, what he described as "dummy flue tiles". He removed mortar, brick and plastic material and opened the flues as much as possible,—put in flue tile as far as he could without tearing down the chimney, but found the opening too small to use the fireplace. Resultant from this 1953 examination and discoveries he declared that in his opinion the furnace explosion had been caused by the inadequate chimney and the single flue to which both the fireplace and furnace were hooked. He said that if the chimney and flues were kept open it might carry the furnace alone, but not both the furnace and fireplace, and that the only way to repair and make the fireplace usable would be to rebuild it entirely with a separate flue which he estimated would cost $600 or $700. On cross-examination and in response to an inquiry as to the originating cause of the defects found he said: "Sloppy construction job, the way it was constructed to start out with. Whoever built it just didn't care how he put it in". He also said the furnace installation was faulty—had too much smoke stack—was too long, with too many elbows. He stated further that the top of the chimney indicated three tile flues, but the outside flues were dummies.

Mr. Lloyd Johnson, a brick contractor and builder of chimneys and fireplaces, examined the construction on May 1, 1957. He found the furnace and fireplace attach-

ed to the same flue. He gave it as his opinion that such construction was both faulty and dangerous.

Plaintiffs' original petition filed November 15, 1955 in Jackson County, Missouri, and their first amended petition filed January 24, 1956, predicated a cause of action upon alleged warranties and false representations. On May 1, 1957, the day of trial, plaintiffs amended further by eliminating the breaches of warranty, and resting upon the charge of false representations, which they claimed were not discovered until November 21, 1953. At the close of all the evidence, plaintiffs amended further by asserting that "by the exercise of reasonable diligence they could not have discovered the falsity of the representations prior to November 21, 1953".

Defendant contends on appeal that the court erred in failing to sustain the motion for directed verdict because (1) plaintiffs' pleadings, as amended, set forth two inconsistent causes of action and (2) the amendments at the commencement of trial and after the evidence was in set up new claims upon which defendant was entitled to prepare new defenses. Although this cause of action arose in the State of Kansas, suit was filed and the case was tried in Missouri. In such a situation we believe the Kansas law determines the substantive law, but the laws of the forum govern procedural matters. We quote in part from Section 509.060, V.A.M.S.: "The plaintiff in his petition or in a reply setting forth a counterclaim and the defendant in an answer setting forth a counterclaim may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party", and from Section 509.490, V.A.M.S.: "A party may amend his pleading as a matter of course at any time before a responsive pleading is filed and served, or, if the pleading is one to which no responsive pleading is required and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty days after it

is filed. Otherewise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires". See also Section 509.500, V.A. M.S.

In Christner v. Chicago, R. I. & P. Ry. Co., 228 Mo.App. 220, 64 S.W.2d 752, 754, it was said: "When jurisdiction of the courts of this state attaches, the rules of procedure are those of the forum and not that of the foreign state where the cause of action arose".

This court in Hargis v. Denny, Mo.App., 117 S.W.2d 368, 372, said: "Under the rule in Missouri the law of the forum governs all matters of pleading and the conduct of proceedings in court".

■ In Hall Motor Freight v. Montgomery, 357 Mo. 1188, 212 S.W.2d 748, 2 A.L.R.2d 1292, our Supreme Court ruled that in a cause of action for damages to a truck arising in Kansas, the Missouri laws applied as to procedural matters when the suit was brought in this state. We hold that the pleadings and amendments thereto were permissible and proper under Missouri laws and there was no error in allowing the same to be made.

■ The court by Instruction No. 1 submitted to the jury the alleged fraudulent misrepresentations as to the basement fireplace and as to the furnace. This instruction further made it prerequisite to a plaintiff verdict that the jury find that plaintiffs did not discover and by the exercise of reasonable diligence could not have discovered the falsity of said representations prior to November 21, 1953. After considering the evidence on misrepresentations in a light favorable to plaintiffs, as we must, we conclude the issues thereon were for the jury. There was proof offered as to specific damages and also as to the difference in value of the property with or without these defects. Defendant has not charged that the verdict and judgment is excessive.

Defendant's remaining assignments may be grouped under his claim that plaintiffs discovered the fraud, if any, more than two years before commencing suit; that the cause of action is barred under the Kansas Statute of Limitations and therefore the court should have directed a verdict for defendant and the instruction submitting such issue to the jury was not justified. The pertinent and applicable part of the General Statutes of Kansas Civil Procedure, Section 60–306 reads: "Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: * * * Third. Within two years: * * * an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud".

Defendant relies on Turner v. Jarboe, 151 Kan. 587, 100 P.2d 675. In that case the fraud was clearly and beyond any reasonable doubt discovered by plaintiff soon after she bought the hotel but she did not sue within two years.

In Sielcken-Schwarz v. American Factors, Ltd., 265 N.Y. 239, 192 N.E. 307, a New York Court of Appeals case, the plaintiff, in 1924, had claimed defendant had by fraud and wrongdoing obtained her shares of stock for an inadequate amount. More than six years thereafter she brought her suit and the court applied the six year limitation statute although certain details of the fraud had come to her knowledge within the six year period. To the same effect is the decision in Talmadge v. United States Shipping Board, Emergency Fleet Corp., 2 Cir., 54 F.2d 240, 243, where the court, in applying the New York law noted that the statute there begins to run upon "accruing of the right to relief" rather than upon "discovery of the fraud". Appellants also cite Meade v. Brosius, 158 Kan. 418, 147 P.2d 716. There the alleged fraud was wrongful disposition of corporate assets. A real estate lease was involved. It

was recorded two years and ten days before the suit was begun. The action was held to be barred, the court ruling that the recording of the lease amounted to notice.

■ Plaintiffs offered evidence that the defendant represented to them that the basement fireplace and furnace were well and properly constructed; that the fireplace burned wood; that defendant had used it and "it drew perfectly"; that the furnace operated efficiently and was adequate to heat the whole house. There was substantial evidence the construction was not good, sufficient and adequate; that the flat smoke stacks were too long and had too many elbows, and that one flue was insufficient to carry both the fireplace and the furnace. There was direct and positive proof that the furnace exploded on more than one occasion, and the downstairs fireplace did not draw perfectly, but rather flooded the whole basement with smoke on the only occasion an attempt was made to use it. Plaintiffs are not builders or experts on either house construction or on furnaces and fireplaces. The basic cause of the difficulties and therefore the ultimate essence of the misrepresentations were not revealed to plaintiffs by Mr. Rapschutz or by his company—Quality Furnace—the original installers, nor by Mr. Caswell on the occasion of his first visit. It was not until a few days before Thanksgiving, 1953, that Mr. Caswell examined the chimney, determined the number of usable flues and explained the whole situation to plaintiffs. Clearly plaintiffs did not have the basic picture revealed to them prior to November, 1953. They had not attempted to use the fireplace before that date. And although Mr. Caswell was called and repaired the furnace in January or February, 1952, he did not discover the full facts and the basic cause until November, 1953.

The twin questions—Did plaintiffs discover the fraud prior to November 21, 1953, and could plaintiffs by the exercise of reasonable diligence have discovered the falsity of the representations prior to November 21, 1953—were submitted to the jury, who found favorably to plaintiffs on both points. We believe that both issues were for the jury. We shall not hold, as a matter of law, that the alleged fraud was discovered, or that in the exercise of reasonable diligence it could have been discovered at an earlier date. We believe the evidence on the whole case as summarized herein is substantial and if believed—and the jury apparently did believe it—is sufficient evidence upon which a verdict and judgment may be properly predicated.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

HUNTER, P. J., and BROADDUS, J., concur.

CROSS, J., not participating.